Marilyn MICK; Crissy Cochran; Lauren Ashley Mick, By and Through her father and next friend Ken Mick, and Ken Mick, Plaintiffs–Appellees,

v.

Major Kim T. BREWER, Roland Neil Meyers, Defendants–Appellants,

and

City of Wichita, Scott Redpath, Special Agent, Defendants.

Marilyn MICK; Crissy Cochran; Lauren Ashley Mick, By and Through her father and next friend Ken Mick, and Ken Mick, Plaintiffs–Appellants,

v.

Major Kim T. BREWER, City of Wichita, Roland Neil Meyers, Defendants,

and

Scott Redpath, Special Agent, Defendant–Appellee.

Nos. 94–3409, 94–3410.

United States Court of Appeals, Tenth Circuit.

Feb. 20, 1996.

Mark G. Ayesh of Ayesh Law Offices, Wichita, Kansas, for Plaintiffs–Appellees in No. 94–3409, and Plaintiffs–Appellants in No. 94–3410.

Blaise Plummer, Assistant City Attorney, Office of the City Attorney of the City of Wichita, Wichita, Kansas, for Defendants–Appellants in No. 94–3409.

David Lind, Assistant United States Attorney, (Randall K. Rathbun, United States Attorney, and Connie R. DeArmond, Assistant United States Attorney, on the brief), Wichita, Kansas, for Defendant–Appellee in No. 94–3410.

Before BALDOCK, BRISCOE and MURPHY, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiff Marilyn Mick filed this action in the district court against Defendants Major Kim T. Brewer and Captain Roland Neil Meyers under 42 U.S.C. § 1983, and against Defendant Special Agent Scott Redpath pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff alleged that Defendant Brewer, a law enforcement officer with the City of Wichita, Kansas, severely and unnecessarily beat Plaintiff during Russian President Boris Yeltsin's visit to Wichita on June 18, 1992. Plaintiff also alleged that Defendant Meyers, a Wichita law enforcement officer, and Defendant Redpath, a Special Agent with the United States Secret Service, failed to intervene to prevent Defendant Brewer from using excessive force against Plaintiff. The district court denied Defendants Brewer and Meyers' motion for summary judgment based on qualified immunity on the grounds that disputed issues of material fact precluded summary judgment. The district court determined, however, that Defendant Redpath was entitled to qualified immunity because he could not see the interaction between Plaintiff and Defendant Brewer giving rise to Plaintiff's failure to intervene claim.

In No. 94–3409, Defendants Brewer and Meyers appeal the district court's order denying them qualified immunity. We affirm in part and dismiss in part for lack of appellate jurisdiction pursuant to *Johnson v. Jones*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). In No. 94–3410, Plaintiff appeals the district court's ruling granting Defendant Redpath qualified immunity on her failure to intervene claim. Because Plaintiff presented evidence to rebut Defendant Redpath's assertion that he could not see the interaction between Plaintiff and Defendant Brewer, we conclude the district court resolved a disputed issue of material fact to award Defendant Redpath qualified

immunity at the summary judgment stage and reverse.

## I.

The facts underlying this controversy occurred on June 18, 1992, during Russian President Boris Yeltsin's visit to Wichita, Kansas. Prior to the date in question, the Secret Service organized security briefings with local law enforcement agencies in Wichita, Kansas to request assistance in providing security during President Yeltsin's visit.[1] The Secret Service coordinated a security plan which included the Sedgwick County Sheriff's Department, the City of Wichita Police Department, the Kansas Highway Patrol, the military, and the Wichita State University Police.

On June 18, 1992 Defendants Brewer and Meyers were assigned to drive route security for President Yeltsin's motorcade in a marked City of Wichita patrol car with Defendant Special Agent Redpath. Defendants' common objective was to provide route security in advance of President Yeltsin's motorcade.

### A.

Plaintiff Mick's version of the events is as follows. On the morning of June 18, 1992, Plaintiff, age forty-six, and her daughter Crissy Cochran, age twenty-three, were performing yard work in their bathing suits at Plaintiff's Wichita home. At about 1:00 p.m., Plaintiff and Crissy decided to take Plaintiff's two and one-half year old daughter Lauren Ashley to Derby, Kansas to visit Plaintiff's sister. Plaintiff and Crissy put on long T-shirts as "cover-ups" and left in Plaintiff's Mercedes Benz for Derby.

Plaintiff reached the intersection of Pawnee and Greenwich Road a short distance from Plaintiff's house. Two police women at the intersection told Plaintiff that she could not drive on Greenwich Road and instructed her to park her vehicle in an abandoned service station lot on the southeast corner of Greenwich Road and Pawnee until President Yeltsin's motorcade passed. Plaintiff followed the instruction, and parked in the service station lot with the vehicle facing west. Because the day was warm, Plaintiff left the windows up, engine running, air conditioner on, and radio playing while they waited for the intersection to open.

Approximately thirty minutes later, one of the police women approached Plaintiff's vehicle from the intersection. From eighty to ninety feet away, the police woman appeared to say something to Plaintiff, but Plaintiff could not hear over the idling diesel Mercedes engine. The police woman turned around and walked back to the intersection.

According to Plaintiff, a few minutes later, a police car pulled up and screeched to a halt in front of Plaintiff's parked Mercedes. Before the vehicle completely stopped, Defendant Brewer left the patrol car and charged toward the Mercedes. Defendant Brewer opened the driver side door, grabbed Plaintiff—a ninety-five pound woman—by the arm and neck, and yanked her out of the vehicle. Defendant Brewer threw Plaintiff with such force that she hit her head on the ground next to the car. Defendant Brewer put his foot on her back and then sat down in her car and attempted to put the Mercedes in reverse, but instead shifted into drive and the car lurched forward. Crissy, who was still in the vehicle, grabbed the lever and shifted to park. As Defendant Brewer tried to move the vehicle he yelled, "Shut up. What the fuck is wrong with you? The President of Russia is coming." Jt.App. at 22.

According to Plaintiff, Defendant Brewer exited the car and dragged Plaintiff across the ground by her arm to the rear of the vehicle. Defendant Brewer then stomped on Plaintiff's back, placed his foot on her back, drove his knee into her lower back, and handcuffed her left wrist. By gripping the loose handcuff, Defendant Brewer pulled Plaintiff up by the left arm and spun her around until she was airborne. When Plaintiff landed at the end of the spin, Defendant Brewer grabbed Plaintiff's head and smashed

---

**1.** 18 U.S.C. § 3056(a)(5) authorizes the United States Secret Service to protect "visiting heads of foreign states or foreign governments."

her face into the trunk of the car, yelling, "What's wrong with you, you fucking woman?"

While Defendant Brewer was dragging Plaintiff across the ground, Crissy got out of the car holding Lauren. Crissy screamed, "You're hurting my mother." Lauren cried and screamed as well. Crissy pleaded with Defendant Brewer to stop, and attempted to cushion her mother's face from the pavement and gravel while Defendant Brewer dragged Plaintiff to the back of the car. Defendant Brewer caused Crissy to fall over backwards and loose her hold on Lauren. At this time, Defendant Meyers stepped out of the patrol car and yelled, "That's enough. Stop. Let's go." Defendant Brewer told Defendant Meyers to leave in the patrol car because he was not finished.

After Defendants Meyers and Redpath left in the patrol car, Defendant Brewer removed the handcuffs. Defendant Brewer asked Plaintiff if she was hurt; Plaintiff replied she was not. Defendant Brewer released Plaintiff. Plaintiff was not charged with any crime.

Plaintiff's husband later took her to a hospital emergency room. Although Plaintiff was not permanently injured, she suffered a sprained back, swollen and bruised wrists, multiple contusions, and internal bleeding of her kidneys. Additionally, Plaintiff alleged that she suffered severe pain and suffering and post-traumatic stress disorder.

Plaintiff's version of the events is corroborated by her daughter Crissy, and two independent witnesses, Darrin Thorburn and Richard Evans, who attempted to intervene to prevent Defendant Brewer from harming Plaintiff. Richard Evans, a postman who delivered mail in the area, had brought his camera in hopes of getting pictures of President Yeltsin. Evans photographed the incident between Defendant Brewer and Plaintiff because he was "totally shocked and in a state of disbelief." Jt.App. at 41. Thorburn and Evans attempted to intervene in the incident. According to Evans, when he and Thorburn walked toward Plaintiff and Defendant Brewer, a second policeman got out of the patrol car and pointed at them and said that if they took one more step, "our butts would go to jail too." *Id.* In an affidavit, Evans stated "[o]ur attempts to intervene were prompted by the observation that the occupants of the police cruiser that brought Major Brewer to the scene were observing the brutality and doing nothing. There were two occupants in the vehicle, one was in uniform and one was not. Both observed the dragging, beating, and kicking of Ms. Mick but did not intervene and stop it." Jt.App. at 577.

## B.

Defendant Brewer's version of the interaction is completely different than that attested to by Plaintiff, Crissy Cochran, Darrin Thorburn, and Richard Evans. According to Defendant Brewer, Plaintiff displayed a belligerent attitude toward the police woman who directed her to park her Mercedes in the parking lot of the abandoned service station. Instead of parking in the lot as directed, Plaintiff parked in the driveway with the engine running and with the car pointing directly to Greenwich Road, the motorcade route. Plaintiff refused the police woman's request to move her car back from Greenwich Road.

According to Defendant Brewer, when he encountered Plaintiff the motorcade was only moments away. Defendant Brewer motioned Plaintiff to move the car back. Plaintiff refused. Defendant Brewer got out of the patrol car and requested Plaintiff's cooperation. Plaintiff refused to cooperate. Because of the possible threat the car posed to President Yeltsin's motorcade, Defendant Brewer attempted to move the vehicle back. Plaintiff fought Defendant Brewer. Defendant Brewer alleged that Plaintiff's "demeanor was angry, evasive, and detached from reality." Jt.App. at 611. Defendant Brewer smelled alcohol inside the vehicle. Plaintiff resisted, used profanity, scratched him with her fingernails, and struck him in the chest with her fists. Defendant Brewer told her that was enough and grabbed her arms to prevent her from battering him. Defendant Brewer told Plaintiff she was under arrest and moved to put her in handcuffs. When he got one handcuff on her, Plaintiff flailed

around and resisted. Defendant Brewer took her to the ground and brought both hands behind her back to secure the other handcuff. At that time, Defendant Meyers said that they had to leave because the motorcade was close. Defendant Brewer said to go on and he would stay. Plaintiff yelled obscenities at President Yeltsin's motorcade as it passed.

Defendant Brewer's version is corroborated by Defendant Meyers and, in part, by Defendant Redpath. In the affidavit he prepared over two years after the event, Defendant Redpath corroborated Defendant Brewer's version of the facts leading up to the moment the patrol car stopped in front of Plaintiff's car. Defendant Redpath claims in his affidavit that from his position in the back seat of the patrol car, he could not see the interaction between Defendant Brewer and Plaintiff which gave rise to Plaintiff's claim that he should have intervened to prevent Defendant Brewer from using excessive force.

### C.

On July 5, 1994 Plaintiff filed a second amended complaint pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) claiming Defendants violated her constitutional rights. Plaintiff alleged, *inter alia,* that: (1) Defendant Brewer used excessive force in violation of the Fourth and Fourteenth Amendments, and (2) Defendants Meyers and Redpath failed to intervene to prevent Defendant Brewer's use of excessive force. Defendants Brewer and Meyers and Defendant Redpath filed separate motions for summary judgment based on qualified immunity. The district court first determined that the law was clearly established that: (1) "citizens have the right under the Fourth Amendment to be free from the use of excessive force by government officials," and (2) "an officer may not refuse to inter-

vene to prevent an exercise of excessive force by another officer." However, the district court noted that Plaintiff and Defendants presented "markedly different versions of the events." Consequently, because it concluded there were disputed issues of material fact, the district court denied Defendants Brewer and Meyers' motion for summary judgment.

Although the district court ruled that disputed issues of material fact precluded summary judgment in favor of Defendant Brewer and Meyers, the court granted Defendant Redpath's motion for summary judgment based on qualified immunity. The district court determined that Defendant Redpath was entitled to qualified immunity because he could not see the interaction between Plaintiff and Defendant Brewer that formed the basis of Plaintiff's failure to intervene claim. This consolidated appeal followed.

In No. 94–3409, Defendants Brewer and Meyers assert the district court erred in denying them summary judgment based on qualified immunity. Specifically, Defendants Brewer and Meyers contend the district court erred by concluding that: (1) disputed issues of material fact precluded summary judgment; (2) the law is clearly established regarding excessive force; and (3) the law is clearly established that a law enforcement official has an affirmative duty to intervene to prevent another law enforcement official's use of excessive force against a citizen.[2]

In No. 94–3410, Plaintiff contends the district court erred in granting Defendant Redpath qualified immunity at the summary judgment stage. Specifically, Plaintiff asserts that disputed issues of material fact regarding whether Defendant Redpath could see the interaction between Plaintiff and Defendant Brewer precluded summary judgment on Plaintiff's failure to intervene claim.

### II.

Before we address the merits of the district court's order we examine the basis of

---

**2.** Defendants Brewer and Meyers also contend the district court erred in denying them qualified immunity because the facts of this case present "extraordinary circumstances." We do not address Defendants' "extraordinary circumstances" argument because they did not raise it in the

district court. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *Walker v. Mather (In re Walker),* 959 F.2d 894, 896 (10th Cir.1992).

our appellate jurisdiction. *E.g., Sevier v. City of Lawrence,* 60 F.3d 695, 701 (10th Cir.1995) ("We have an independent duty to inquire into our own jurisdiction, whether or not the issue is raised by the parties."). 28 U.S.C. § 1291 vests the courts of appeals with "jurisdiction of appeals from all final decisions of the district courts." Generally, we do not have jurisdiction over interlocutory appeals of the denial of motions for summary judgment because such pretrial orders· are not 'final decisions' for the purposes of 28 U.S.C. § 1291. *See Wilson v. Meeks,* 52 F.3d 1547, 1551 (10th Cir.1995). In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), however, the Supreme Court ruled "that a district court's denial of a claim of qualified immunity, *to the extent it turns on an issue of law,* is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 not withstanding the absence of a final judgment." *Id.* at 530, 105 S.Ct. at 2817 (emphasis added).

■ While these appeals were pending, the Supreme Court clarified the "to the extent it turns on an issue of law" language from *Mitchell* in *Johnson v. Jones,* —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Displacing our precedents allowing interlocutory appeals from nearly all orders denying qualified immunity at the summary judgment stage, *e.g., Austin v. Hamilton,* 945 F.2d 1155, 1157, 1162–63 (10th Cir.1991), the Supreme Court held:

> [A] defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial.

*Johnson,* —— U.S. at ——, 115 S.Ct. at 2159. We recently noted that *Johnson* limits the scope of interlocutory appeals from the denial of qualified immunity:

> [T]o "purely legal" challenges to the district court's ruling on whether a plaintiff's legal rights were clearly established, and cannot include attacks on the court's "evidence sufficiency" determinations about whether there are genuine disputes of fact. That is, we can only review whether the district court "mistakenly identified clearly established law ... given [ ] the facts that the district court assumed when it denied summary judgment for that (purely legal) reason."

*Sevier,* 60 F.3d at 700 (quoting *Johnson,* —— U.S. at ——, ——, 115 S.Ct. at 2156, 2159). Simply put, "a district court's pretrial rejection of a proffered qualified immunity defense remains immediately appealable as a collateral order to the extent that it turns on a pure issue of law ... [but] a district court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on ... an issue of fact." *Stella v. Kelley,* 63 F.3d 71, 74 (1st Cir.1995) (citing *Johnson,* —— U.S. at ——, 115 S.Ct. at 2159).

Accordingly, in No. 94–3409 we have jurisdiction under 28 U.S.C. § 1291 to review the district court's clearly-established-law determinations regarding Plaintiff's excessive force and intervention claims because they present "purely legal" issues. *Johnson,* —— U.S. at —— – ——, 115 S.Ct. at 2158–59; *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817–18. We lack jurisdiction, however, to the extent that Defendants Brewer and Meyers seek interlocutory review of the district court's ruling that genuine disputes of fact precluded summary judgment based on qualified immunity. *Johnson,* —— U.S. at ——, 115 S.Ct. at 2159. We therefore dismiss Defendants Brewer and Meyers' appeal in part for lack of jurisdiction.[3]

In No. 94–3410, Plaintiff appeals the district court's order granting Defendant Red-

---

3. We sua sponte requested supplemental briefs from the parties in No. 94–3409 regarding our appellate jurisdiction in light of *Johnson.* In their Memorandum Brief on Appellate Jurisdiction, Defendants Brewer and Meyers state that they seek review of "legal issues" and do not appeal the district court's conclusion that disputed issues of fact preclude summary judgment. We note, however, that Defendants Brewer and

Meyers' opening brief states "[t]he district court erred in holding that material disputes of fact precluded the court from granting summary judgment." No. 94–3409, Aplt.Br. at 12. Thus, Defendants Brewer and Meyers' do in fact seek appellate review of the district court's determination that disputed issues of fact prevented summary judgment.

path qualified immunity. Because Plaintiff sought review of the district court's order disposing of fewer than all parties involved in the action, Plaintiff requested certification of the issue as a final judgment under Rule 54(b). *See* Fed.R.Civ.P. 54(b); *Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 7–8, 100 S.Ct. 1460, 1464–65, 64 L.Ed.2d 1 (1980) (outlining certification procedure under Rule 54(b)). The district court certified its order granting Defendant Redpath qualified immunity as a final judgment under Rule 54(b) on January 26, 1995. Consequently, we have jurisdiction over Plaintiff's appeal in No. 94–3410 under 28 U.S.C. § 1291. *See Workman v. Jordan,* 32 F.3d 475, 478 (10th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1357, 131 L.Ed.2d 215 (1995).

### III.

Turning to the merits, "[q]ualified immunity protects public officials from individual liability in a § 1983 action unless the officials violated 'clearly established ... constitutional rights of which a reasonable person would have known.'" *Workman v. Jordan,* 32 F.3d at 478 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).[4] The plaintiff initially bears a heavy two-part burden when the defendant pleads the defense of qualified immunity. *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995). The plaintiff must show (1) "that the defendant's actions violated a constitutional or statutory right," and (2) that the right "allegedly violated [was] clearly established at the time of the conduct at issue." *Id.* Unless the plaintiff carries its twofold burden, the defendant prevails. *Pueblo Neighborhood Health Ctrs. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988).

"[P]laintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Romero v. Fay,* 45 F.3d 1472, 1475 (10th Cir.1995). "To be clearly established, '[t]he contours of the

right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Albright,* 51 F.3d at 1535 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "Although the very action in question does not have to have previously been held unlawful, 'in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992).

The burden shifts to the defendant only if the plaintiff successfully carries his two-part burden. *Albright,* 51 F.3d at 1535. At that point the defendant bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity. *Id.; see also* Fed. R.Civ.P. 56(c). This requires the defendant to show that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to the defendant at the time. *E.g., Cummins v. Campbell,* 44 F.3d 847, 850 (10th Cir.1994). If the district court denies the defendant qualified immunity, the court should identify on the record the defendant's conduct that violated clearly established law. *Albright,* 51 F.3d at 1535. "Defendants who are unsuccessful in having a lawsuit dismissed on qualified immunity grounds before trial may reassert the defense at trial or after trial." *Quezada v. County of Bernalillo,* 944 F.2d 710, 718 (10th Cir.1991).

We review the district court's qualified immunity determination at the summary judgment stage de novo, viewing the evidence in the light most favorable to

---

**4.** The qualified immunity rules apply equally in suits against state officers under § 1983 and suits against federal officers under *Bivens. Davis v.* *Scherer,* 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984).

the nonmoving party. *Romero,* 45 F.3d at 1475. "Whether an asserted federal right was clearly established at a particular time ... presents a question of law ... [that] must be resolved de novo on appeal." *Elder v. Holloway,* — U.S. —, —, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994) (citation omitted). With these principles in mind, we examine Defendants Brewer and Meyers' arguments in No. 94–3409 and Plaintiff's arguments in No. 94–3410 in turn.

### A. No. 94–3409

 Defendants Brewer and Meyers assert the district court erred in denying them summary judgment based on qualified immunity. Specifically, Defendants Brewer and Meyers contend the district court erred by concluding that the law is clearly established: (1) regarding excessive force, and (2) that a law enforcement official has an affirmative duty to intervene to prevent another law enforcement official's use of excessive force.[5] We disagree.

### 1.

 Defendants Brewer and Meyers first contend the district court erred in concluding that "citizens have the [clearly established] right under the Fourth Amendment to be free from the use of excessive force by government officials." Defendants Brewer and Meyers assert that the relevant law governing the use of force was not clearly established as of June 18, 1992. Instead, Defendants argue, "[w]hether use of force during the investigatory stop is a violation of the Fourth Amendment right to be free of unreasonable seizure [sic] is an open question." No. 94–3409, Aplt.Br. at 19. Defendants rely

on language from *United States v. Merkley,* 988 F.2d 1062 (10th Cir.1993) where we observed:

> There are no hard-and-fast rules regarding the reasonableness of force used during investigatory stops, and prior cases have eschewed establishing any bright-line standards for permissible conduct. It is clear, however, that, because safety may require the police to freeze temporarily a potentially dangerous situation, both the display of firearms and the use of handcuffs may be part of a reasonable *Terry* stop.

*Id.* at 1063. Defendants contend that "if there is no bright-line standards for permissible use of force during a *Terry* stop," then the law governing excessive force was not clearly established. No. 94–3409, Aplt.Br. at 19.

We reject Defendants Brewer and Meyers' argument that the law governing excessive force was not clearly established in June 1992. In 1989 the Supreme Court decided *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and directed lower courts to analyze constitutional claims of excessive force by applying Fourth Amendment standards of objective reasonableness. *See id.* at 395, 109 S.Ct. at 1871 ("Today we make explicit ... that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...."). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the

---

5. Defendants Brewer and Meyers also argue that the district court erred by stating that "[i]n excessive force cases, the application of the qualified immunity defense is controlled by the same standard as the underlying alleged constitutional violation: whether the officer's actions were objectively reasonable." Dist.Ct.Order at 6 (citing *Quezada,* 944 F.2d at 718). We reject Defendants' argument. The district court correctly observed that the qualified immunity test and the excessive force standard separately inquire whether the defendant officer's conduct was objectively reasonable under the circumstances. *Compare Elder,* 114 S.Ct. at 1021 ("The doctrine of qualified immunity shields public officials ...

from damages actions unless their conduct was unreasonable in light of clearly established law.") *with Graham,* 490 U.S. at 399, 109 S.Ct. at 1873 ("The Fourth Amendment inquiry [in an excessive force case] is one of 'objective reasonableness' under the circumstances...."). *See also Quezada,* 944 F.2d at 718 ("While qualified immunity is a powerful defense in other contexts, in excessive force cases the substantive inquiry that decides whether the force exerted by police was so excessive that it violated the Fourth Amendment is the same inquiry that decides whether the qualified immunity defense is available to the government actor.").

officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Federal precedent predating the event in the instant case ruled that "[a] law enforcement official's liability under 42 U.S.C. § 1983 for a violation of an individual's constitutional rights through the use of excessive force in completing an arrest is well established." *Bauer v. Norris,* 713 F.2d 408, 411 (8th Cir. 1983); *accord Quezada,* 944 F.2d at 716. Our observation in *Merkley* that "[t]here are no hard-and-fast rules regarding the reasonableness of force used during investigatory stops," *Merkley,* 988 F.2d at 1063, merely illustrates that the excessive force inquiry requires the court to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872. We therefore conclude the district court did not err by ruling that the law governing excessive force cases was clearly established on June 18, 1992.

### 2.

 Next, Defendants Brewer and Meyers contend the district court erred by concluding that the law was clearly established that a law enforcement official has an affirmative duty to intervene to prevent another law enforcement official's use of excessive force. We reject Defendants' argument because Tenth Circuit precedent clearly established before June 18, 1992 that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983. *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1433 (10th Cir.1984) (ruling that officer who did not prevent fellow officer's use of allegedly excessive force against an arrestee "may be liable [under § 1983] if he had the opportunity to intervene but failed to do so"), *vacated on other grounds,* 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985); *accord O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other offi-

cers."); *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1441–42 (11th Cir.1985) ("It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance."). We therefore conclude the district court did not err by ruling that the law governing Plaintiff's intervention claim against Defendant Meyers was clearly established on June 18, 1992.

### B. No. 94–3410

Plaintiff contends the district court erred in granting Defendant Redpath qualified immunity at the summary judgment stage. Plaintiff asserts that she presented evidence to rebut Defendant Redpath's statement in his affidavit that he could not see the interaction between Plaintiff and Defendant Brewer that forms the basis of Plaintiff's claim that Defendant Redpath failed to intervene to prevent Defendant Brewer's use of excessive force. The district court erred, Plaintiff argues, by resolving a disputed issue of material fact in order to grant summary judgment in favor of Defendant Redpath.

Viewing the evidence in the light most favorable to Plaintiff, *e.g., Romero,* 45 F.3d at 1475, we conclude the district court erred by entering summary judgment in favor of Defendant Redpath. The district court granted Defendant Redpath's motion for summary judgment based on qualified immunity because it determined that Defendant Redpath "did not have time to intervene," "was unable to see what Mick may have said or done when Brewer approached her car," and "could not tell what passed between Brewer and Mick which set the confrontation in motion." Dist.Ct.Order at 9–10. The district court noted, however, that Defendant Redpath's argument was "to some extent controverted by the testimony of the eyewitnesses suggesting that there was time to intervene." *Id.* at 9.

Plaintiff insists that Richard Evan's affidavit controverted Defendant Redpath's argu-

ment that he could neither see nor had time to intervene. Plaintiff attached the affidavit to her response to Defendant Redpath's motion for summary judgment. In the affidavit, Mr. Evans stated:

> Another eyewitness (Mr. Darrin Thorburn) and I approached Major Brewer and Marilyn Mick with the intention of intervening and stopping Major Brewer from brutalizing Ms. Mick. We were told not to intervene.

> *Our attempts to intervene were prompted by the observation that the occupants of the police cruiser that brought Major Brewer to the scene were observing the brutality and doing nothing.* There were two occupants in the vehicle, one was in uniform and one was not. *Both observed the dragging, beating, and kicking of Ms. Mick, but did not intervene and stop it.*

Jt.App. at 577 (emphasis added). Thus, Plaintiff presented to the district court a sworn affidavit by an eyewitness to the effect that Defendant Redpath watched the incident and did nothing to prevent it. This affidavit presents a dispute of material fact whether Defendant Redpath observed the interaction and failed to intervene to prevent Defendant Brewer from using allegedly excessive force.[6] We therefore conclude the district court erroneously awarded Defendant Redpath qualified immunity at the summary judgment stage. *See, e.g., Frohmader v. Wayne,* 958 F.2d 1024, 1028 (10th Cir.1992) ("Courts may not resolve disputed questions of material fact in order to grant summary judgment."); *Browning v. Snead,* 886 F.Supp. 547, 552 (S.D.W.Va.1995) (genuine issue of material fact as to whether police officer saw alleged abuse of arrestee by another officer and did nothing to prevent it precluded summary judgment in favor of officer based on qualified immunity).

**IV.**

In conclusion, we DISMISS Defendants Brewer and Meyers' appeal in part in No. 94–3409 for lack of appellate jurisdiction to the extent Defendants seek appellate review of the district court's determination that genuine issues of material fact precluded summary judgment. In all other respects, we AFFIRM the district court's denial of qualified immunity in No. 94–3409. In No. 94–3410, we REVERSE the district court's order granting Defendant Redpath qualified immunity and REMAND for further proceedings consistent herewith.[7]

---

6. Plaintiff also asserts that Defendant Redpath contradicted his own allegations that he could not see the interaction between Defendant Brewer and Plaintiff in a report Defendant Redpath prepared "within a day or two of the incident." Plaintiff contends that in the report Defendant Redpath describes in detail the interaction between Defendant Brewer and Plaintiff that he alleges in his affidavit he could not see. *See* Jt.App. at 491. However, Plaintiff failed to present this report to the district court. Consequently, we do not consider it on appeal.

7. We deny Plaintiff's motion for sanctions.