UNITED STATES COURT OF APPEALS

**Filed 12/6/96**

FOR THE TENTH CIRCUIT

PATRICIA LOPKOFF, VINCENT C.
TODD,

      Plaintiffs-Appellees,

v.

GREGG SLATER, PATRICK
WILSON, MARY SUTTON, STEVE
EVANS,

      Defendants-Appellants,

   and

CITY OF LAKEWOOD,

      Defendant.

No. 95-1454
(D.C. No. 95-D-879)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before BALDOCK and BRISCOE, Circuit Judges, and LUNGSTRUM,[**] District
Judge.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    Honorable John W. Lungstrum, District Judge, United States District Court
for the District of Kansas, sitting by designation.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defendants-appellants, officers with the City of Lakewood police department, appeal the district court's order denying their motion for summary judgment based on the defense of qualified immunity. Plaintiffs claim that defendants violated their rights secured by the First and Fourth Amendments when they entered plaintiff Lopkoff's apartment on two occasions. Defendants contend that they are entitled to qualified immunity because they entered Lopkoff's apartment only to ensure that her children were safe, and did not charge her with any crime.

I.

Plaintiffs' claims are based on two incidents occurring in 1993 in which defendants entered Lopkoff's apartment pursuant to complaints that she was not caring for her children properly. The undisputed facts establish that on April 21, 1993, defendant Slater and another officer arrived at Lopkoff's apartment in response to a telephone report from her sister that she was intoxicated and unable

-2-

to care for her three-year-old son. The child opened the apartment door, thus permitting the officers to see into the apartment and observe that it was cluttered with clothing, boxes, papers and bags. Lopkoff met the officers just inside the door and replied "O.K." to the officers' advisement that they were there to investigate the welfare of her son. Lopkoff, who is hearing impaired, then requested permission to call an interpreter and her attorney. Slater informed her that she could do so, to which Lopkoff replied, "no." Slater smelled alcohol on Lopkoff's breath. Slater followed Lopkoff around her apartment, for reasons of officer safety. At some point another officer arrived and took photographs of the inside of Lopkoff's apartment. The officers also searched the inside of Lopkoff's refrigerator. During the search, Lopkoff's attorney, plaintiff Todd, arrived. He informed defendants of his opinion that the search of Lopkoff's apartment was improper absent a search warrant. Defendants dispute Todd's statement that the officers informed him that they were investigating the scene of a child abuse crime.

The next incident occurred on May 11, 1993, pursuant to a telephone call to the police by Lopkoff's sister or daughter alleging that Lopkoff was abusing her children. When defendants Slater and Wilson arrived at the apartment building, Lopkoff's daughter was in the parking lot. She stated that her mother had been drinking, and had hit her on the shoulder and forearm. Slater and Wilson then

-3-

went to Lopkoff's apartment where she was meeting with Todd. Lopkoff instructed Todd not to let the officers into her apartment. Todd informed the officers that they could not talk with Lopkoff until an interpreter arrived. The officers then left, but returned shortly, stating that they could wait no longer to speak with Lopkoff. Lopkoff's brother was present, and the children were with him outside the apartment. At some point defendants Sutton and Evans came on the scene. According to Todd, he was threatened with arrest if he did not step aside to permit the officers to enter the apartment to pursue their criminal investigation. Defendants' version is that Todd was informed that if he did not stop interfering with their efforts to speak with Lopkoff, he would be charged with interference. Thereafter, defendants Slater, Wilson, Sutton and Evans entered Lopkoff's apartment, at which point Lopkoff left the apartment. The officers then left, closing and locking the front door. Plaintiffs were locked out for three hours until a professional locksmith unlocked the door.

## II.

We first examine our jurisdiction to consider this appeal. We requested briefs from the parties to address the recent decision of <u>Johnson v. Jones</u>, 115 S. Ct. 2151 (1995), holding that interlocutory jurisdiction does not lie to review a denial of qualified immunity when the denial is based on the existence of a genuine issue of material fact. 115 S. Ct. at 2156, 2159. "<u>Johnson</u> reaffirmed

-4-

that summary-judgment determinations <u>are</u> appealable when they resolve a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity, typically, the issue whether the federal right allegedly infringed was 'clearly established.'" <u>Behrens v. Pelletier</u>, 116 S. Ct. 834, 842 (1996)(citations omitted). Accordingly, we have jurisdiction to review the district court's determinations regarding whether the law was clearly established. <u>Mick v. Brewer</u>, 76 F.3d 1127, 1133 (10th Cir. 1996). "We lack jurisdiction, however, to the extent that [defendants] seek interlocutory review of the district court's ruling that genuine disputes of fact precluded summary judgment based on qualified immunity." <u>Id.</u> Accordingly, to the extent that defendants claim that Lopkoff consented to the first search,[1] we are without jurisdiction to review the district court's conclusion that material disputed facts exist regarding whether Lopkoff consented.

Further, we do not have the benefit of defendants' affidavits because they were not included in appellants' appendix. <u>See</u> <u>Rios v. Bigler</u>, 67 F.3d 1543, 1553 (10th Cir. 1995)(appellant has responsibility to provide proper record on appeal). Therefore, we do not address the claim that the evidence establishes that defendants Sutton and Evans remained outside Lopkoff's apartment.

---

[1] Defendants suggest in their jurisdictional brief that they relied on consent or exigent circumstances as authority for their entry into Lopkoff's apartment. In their opening brief, defendants do not argue that consent or exigent circumstances provided justification to enter the apartment. They do, however, claim in their reply brief that they could have believed they had consent.

Plaintiff Todd's claims are not before us in this appeal. The district court granted defendants' motion for summary judgment on Todd's First Amendment claim, and held that Todd's Fourth Amendment claim was not presented for its determination. Todd did not file a cross appeal. See Snell v. Tunnell, 920 F.2d 673, 676 (10th Cir. 1990). We therefore address Lopkoff's claims that her Fourth Amendment rights were violated, as those rights are enforced against the States through the Fourteenth Amendment.

III.

A government official is entitled to qualified immunity from civil damages for performing discretionary functions when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We review de novo the district court's qualified immunity holding at the summary judgment stage. Mick, 76 F.3d at 1134-35.

Defendants raised the defense of qualified immunity, thus placing on plaintiffs the "heavy burden" to demonstrate that defendants violated clearly established law. Hannula v. City of Lakewood, 907 F.2d 129, 130-31 (10th Cir. 1990). To meet this burden, plaintiffs must "demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. The 'contours

of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. at 131 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)(further citation omitted)). The official's specific actions need not have been previously held unlawful, but the plaintiff must demonstrate that the unlawfulness of the conduct in question is apparent in light of preexisting law. Anderson, 483 U.S. at 640. If the plaintiffs satisfy this burden, the defendants must show "that no material issues of fact remain as to whether the defendant[s'] actions were objectively reasonable in light of the law and the information the defendant[s] possessed at the time of [their] actions." Salmon v. Schwarz, 948 F.2d 1131, 1136 (10th Cir. 1991)(citations omitted).

IV.

"The boundary for [defendants'] conduct establishing the 'contours of the right' involved is the Fourth Amendment, which proscribes unreasonable searches." Franz v. Lytle, 997 F.2d 784, 787 (10th Cir. 1993). "[O]ne governing principle, justified by history and by current experience, has consistently been followed:  except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless is has been authorized by a valid search warrant." Camara v. Municipal Court, 387 U.S. 523, 528-29 (1967). The privacy of the dwelling has consistently been protected over the years. Wyman v. James, 400 U.S. 309, 316 (1971).

Defendants do not dispute that the law was clearly established that a warrantless search of a private residence is per se unreasonable under the Fourth Amendment unless one of "a few specifically established and well-delineated exceptions" applies. Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971). Rather, they claim that "a reasonable officer could have believed [defendants'] warrantless search[es] to be lawful, in light of clearly established law and the information the searching officers possessed." Anderson, 483 U.S. at 641. Defendants maintain that because they had "received specific information questioning the safety of children," e.g., appellants' opening brief at 1, they acted in an objectively reasonable manner when they entered Lopkoff's private residence.

Defendants argue that their subjective intent is relevant to the inquiry. Appellants' opening brief at 13. It is not relevant. Anderson, 483 U.S. at 641. Defendants emphasize that Lopkoff was never charged with a criminal offense as a result of their investigation. "It is surely anomalous to say that the individual and [her] private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." Camara, 387 U.S. at 530 (footnote omitted).

We are not persuaded by defendants' argument that the case law permitting police officers to safeguard persons in custody serves to establish that police

officers may disregard the warrant requirement where child welfare is concerned, absent exigent circumstances. We do not discount the importance of children's safety, but we reject defendants' unwarranted attempt to invoke it to justify their actions under the circumstances presented here.

Defendants assume, without supporting case authority, that it has been established that social workers are authorized to make warrantless entries into private residences. Generally, the actions of social workers, as well as those of police officers, are evaluated under a traditional Fourth Amendment analysis, even in cases involving child abuse and neglect. See Parkhurst v. Trapp, 77 F.3d 707, 711 (3d Cir. 1996)(qualified immunity denied to police officers for warrantless search of residence to locate missing child where no showing of imminent danger); Lenz v. Winburn, 51 F.3d 1540, 1551-52 (11th Cir. 1995)(qualified immunity granted to social worker for entry into private residence as objectively reasonable under the circumstances); Snell, 920 F.2d at 691, 700 (child welfare workers not entitled to absolute immunity in cases involving claims of child abuse; qualified immunity not available to child welfare workers who gained entry into residence based on known false allegations); Good v. Dauphin County Social Servs., 891 F.2d 1087, 1095 (3d Cir. 1989)(qualified immunity denied to social worker and police officer for forced entry into residence for strip search of child where no emergency existed); Darryl H. v. Coler, 801 F.2d 893,

908 (7th Cir. 1986)(social workers entitled to qualified immunity because they acted pursuant to departmental guidelines and could not have been expected to know that following the guidelines violated clearly established constitutional rights); White ex rel. White v. Pierce County, 797 F.2d 812, 816 (9th Cir. 1986)(qualified immunity granted to police officers for entry into private residence in child abuse investigation where exigent circumstances were present); see also Wildauer v. Frederick County, 993 F.2d 369, 373 (4th Cir. 1993)("Individuals who investigate child abuse or neglect enjoy at least qualified immunity;" entry into private residence was consensual, and state's interest in medical examination of foster children "outweighed any attenuated privacy interest of [plaintiff].").

To the extent defendants rely on Wyman v. James for the proposition that a social worker does not need a search warrant to enter a private residence, that reliance is misplaced. Wyman involved a challenge to the requirement that a social worker conduct a home visit as a prerequisite to the receipt of welfare benefits. The Court delineated eleven factors supporting the conclusion that a home visit was not an unreasonable requirement. 400 U.S. at 318-24. The Court emphasized that the plaintiff had the choice to refuse the home visit and thus forfeit the benefits, id. at 324, a choice not available to Lopkoff.

Defendants argue that Tenth Circuit authority was confusing or contradictory, citing Franz, 997 F.2d 784, and Snell, 920 F.2d 673. They maintain that those cases demonstrate the confusion about whether defendants should have known that they were not authorized to enter and search Lopkoff's apartment. Defendants have misapprehended the facts and holding of Franz. In both cases, this court concluded that the respective police officers did not act in an objectively reasonable manner and were not entitled to qualified immunity. Franz, 997 F.2d at 793, Snell, 920 F.2d at 700. Neither case addressed the precise issue raised here, however.

Viewing the evidence in the light most favorable to plaintiffs, see Mick, 76 F.3d at 1134-35, we conclude that no reasonable officer would consider the searches lawful. There was no evidence that the three-year-old boy was neglected at the first visit, the children were not present in the apartment during the second visit, and defendants identified no circumstances to justify a search based on officer safety, see United States v. Tisdale, 921 F.2d 1095, 1097 (10th Cir. 1990)(protective sweep of home by officer executing arrest warrant justified by defendant's history of firearm violations, possibility that defendant was armed, sight of defendant fleeing out window and sound of two gunshots). Moreover, defendants do not claim exigent circumstances existed. A reasonable police officer trained in the law of search and seizure would not have believed that a

-11-

warrantless entry into Lopkoff's private residence under these circumstances was lawful. <u>Cf.</u> <u>Franz</u>, 997 F.2d at 793 ("[P]olice officers, functioning as police officers, must conduct themselves by the constitutional norms that embrace their training."). Accordingly, we affirm the district court's conclusion that defendants were not entitled to qualified immunity from Lopkoff's Fourth Amendment claims.

AFFIRMED.


Entered for the Court


Mary Beck Briscoe
Circuit Judge