**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 12 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

WILLIAM R. BROWN,

      Plaintiff-Appellant,

v.

DAN DIETZ, City Police Chief;
TOM LAITER, Animal Control
Officer; DENNIS MORGAN, Deputy
Police Officer; TERRY SOLANDER,
City Prosecutor; GLORIA TRUMPP,
Municipal Judge; CITY OF
GARNETT, KANSAS,

      Defendants-Appellees.

No. 00-3187
(D.C. No. 99-CV-2476-JWL)
(D. Kan.)

---

**ORDER AND JUDGMENT**  *

---

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument. [1]

Plaintiff appellant William R. Brown appeals the judgment of the district court awarding summary judgment to defendants on his various civil rights claims.  We affirm in part and reverse and remand in part.

Under Rule 1001 of the Kansas Court Rules, only the news media and educational television stations may record public proceedings before the municipal courts of that state.  *See* Rules of Sup. Ct. of Kan. R. 1001. In November 1997, a police officer testifying at a hearing in the municipal court in Garnett, Kansas, observed a hand-held electronic tape recorder in plaintiff's shirt pocket.  The officer reported the presence of the tape recorder to the city attorney, defendant Solander.

At the conclusion of the hearing, defendant Dietz, who was then the chief of police in Garnett, and defendants Laiter and Morgan followed plaintiff out of the courthouse and saw him get into a truck parked nearby.  Upon being asked by Officer Dietz to exit the vehicle, plaintiff did so and further complied with Officer Dietz's request that he stand "spread eagle" so that a pat-down search

---

[1]  Neither appellant's brief nor the brief of the appellees in this case included a copy of the memorandum and order of the district court.  We remind the litigants of their obligations under 10th Cir. R. 28.2 to attach such materials to their briefs.

could be conducted.  After the discovery of the tape recorder in plaintiff's front shirt pocket, the pat-down ceased, and plaintiff was asked to return to the courtroom where the earlier proceeding had been held.

Upon return to the courtroom, Officer Dietz turned over the tape recorder to the presiding municipal judge.  When plaintiff refused to identify himself, Officer Dietz removed plaintiff's driver's license from his back pocket and gave it to defendant Solander who looked at it, made a brief note, and immediately returned it to plaintiff.  Plaintiff was repeatedly assured that he was not under arrest.  After the judge and Officer Dietz listened to a few minutes of the indistinguishable tape recording, the recorder was returned to plaintiff.  The judge kept the cassette tape but informed plaintiff that he could obtain a new cassette tape from the clerk of the court on his way out.  Approximately ten to twelve minutes elapsed from the time plaintiff was stopped by Officer Dietz until he left the courtroom after being questioned.

Plaintiff then brought this civil rights action against Officers Dietz, Laiter and Morgan, the city prosecutor, the municipal judge, and the City of Garnett asserting claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and alleging that this incident violated his rights under the Fourth, Fifth, Sixth, Thirteenth, and Fourteenth Amendments to the Constitution.

In response to plaintiff's complaint, defendants argued that none of plaintiff's constitutional rights had been violated and, alternatively, that if they were, those rights were not clearly established. These contentions form the qualified immunity defense which "protects public officials from individual liability in a § 1983 action unless the officials violated clearly established . . . constitutional rights of which a reasonable person would have known." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) (quotations omitted). [2] In analyzing plaintiff's claims, the district court correctly chose to determine whether plaintiff had alleged the deprivation of a constitutional right in the first instance. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). After concluding that there had been no constitutional violation sufficient to sustain any of plaintiff's claims, the district court granted summary judgment to defendants. In rejecting plaintiff's Fourth Amendment claim, the district court concluded that, because defendant Dietz had reasonable suspicion to believe that plaintiff was engaged in wrongdoing and because the detention lasted no longer than was necessary to effectuate the purpose of the stop, the investigative

---

[2] "[T]he affirmative defense of qualified immunity [] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Once a defendant has advanced a qualified immunity defense, the burden shifts to the plaintiff to establish (1) that the defendant's action violated a constitutional or statutory right and (2) that this right was clearly established at the time of the defendant's actions. *See id.* at 1155-56.

-4-

detention was legal as a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 22-25 (1968). However, while the stop in this case may have been lawful under *Terry*, the subsequent search was not. *See, e.g., United States v. Melendez-Garcia*, 28 F.3d 1046, 1051 (10th Cir. 1994) (holding initial stop justified under *Terry,* but subsequent seizure required probable cause).

In *Michigan v. Long*, 463 U.S. 1032, 1052 n.16 (1983), the Court explained that a search incident to a *Terry* stop is "protective in nature and limited to weapons." Further, "[a] *Terry* search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. . . . The sole justification of the search . . . is the protection of police officers and others nearby. . . ." *Id.* at 1049 n.14 (quotation omitted). *See also United States v. Gonzalez*, 763 F.2d 1127, 1130-31 (10th Cir. 1985) (noting that, unless a person consents to a search after a *Terry* stop, the officer must choose between arresting the person in order to conduct an involuntary search or letting him go).

Defendants do not suggest that the search in this case was mandated by concerns for officer safety or that plaintiff consented to the search. Instead, they argue that probable cause supported the stop and eventual search. We are not persuaded.

It is true that, where probable cause to arrest exists and where certain exigent circumstances are present, a "very limited" warrantless search can pass constitutional muster. *See Cupp v. Murphy*, 412 U.S. 291, 296 (1973); *United States v. Rizzo*, 583 F.2d 907, 910 (7th Cir. 1978). While the search here was limited to a pat-down and was stopped immediately when defendant Dietz found the tape recorder in plaintiff's shirt pocket, and while the risk may have existed that the tape would be erased or secreted during the delay while a warrant was obtained, we conclude that probable cause did not exist to justify the search in the first instance.

> Probable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

*Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (quotation omitted). An officer does not need enough evidence to justify conviction, but he or she must have more than a mere suspicion of wrongdoing. *See id.* at 175; *see also United States v. Matthews*, 615 F.2d 1279, 1284 (10th Cir. 1980).

In reciting the facts of this case, the district court stated that "[d]uring the hearing, Officer Tate witnessed Mr. Brown 'playing with' a handheld electronic tape-recording device, an action Officer Tate interpreted as Mr. Brown's attempt to record the court proceedings." Memorandum and Order at 2. If this were an

accurate characterization of the record, we would then be required to determine whether such information was sufficient to provide probable cause to arrest. The record, however, does not support the district court's statement of the facts.

The only evidence in the record regarding Officer Tate's knowledge is his sworn affidavit in which he states simply that "[w]hen I was leaving the witness stand, I saw a man in the front row with a tape recorder in his front shirt pocket. I reported the presence of the tape recorder to City Attorney Terry Solander." R. Vol. I, tab A. The evidence that plaintiff had the tape recorder out of his pocket and was "playing with it" comes from plaintiff's own deposition taken well after the incident at issue here. *See id.* Attach. to Doc. 17 at 15-16. There is no evidence that Officer Tate ever saw the tape recorder out of plaintiff's pocket or that he saw plaintiff manipulating it in any way.

Based on this evidence, we conclude that the presence of a tape recorder in plaintiff's pocket did not warrant a "man of reasonable caution in the belief that an offense has been or is being committed." *See Brinegar*, 338 U.S. at 175-76 (quotation omitted). The fact that plaintiff had a tape recorder in his pocket supports only the mere suspicion that he had been recording court proceedings, a threshold insufficient to establish probable cause. *See id.* at 175. We hold, therefore, that because defendants did not have probable cause to arrest

plaintiff under the "exigent circumstances" exception, the subsequent warrantless search of his person violated plaintiff's rights under the Fourth Amendment.

As mentioned above, the district court concluded that no constitutional violation had occurred in this case, making it unnecessary for that court to fully analyze defendants' qualified immunity defense. Because we have concluded that a constitutional violation did occur, we must now turn to the second prong of the qualified immunity defense, i.e., that, even if plaintiff's constitutional rights were violated, such rights were not clearly established at the time of the violation. If the rights violated were not clearly established, defendants will still be afforded qualified immunity from this lawsuit. Whether a particular federal right was clearly established is a question of law, *Mick*, 76 F.3d at 1135, which we are as well-qualified to determine as the district court.

"[In order f]or the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains." *Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997). Our review of the pertinent precedent makes it clear that the constitutional right violated by defendants in this case was clearly established at the time of their unlawful conduct.

As discussed above, as early as 1983 in *Michigan v. Long*, 463 U.S. 1032, 1052 n.16 (1983), the Supreme Court explained that a search incident to a *Terry*

-8-

stop is "protective in nature and limited to weapons." Further, "[a] *Terry* search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. . . . The sole justification of the search . . . is the protection of police officers and others nearby. . . ." *Id.* at 1050 n.14 (quotation omitted). *See also Gonzalez*, 763 F.2d at 1130-31 (noting that, unless a person consents to a search after a *Terry* stop, the officer has to choose between arresting the person in order to conduct an involuntary search or letting him go).

Thus, the law was clearly established well before 1997 that the reasonable suspicion to stop someone under *Terry* did not then justify a search for anything other than a weapon. The contours of probable cause were also clearly established by 1997, *see Brinegar*, 338 U.S. at 175-76. A comparison of the *Brinegar* standard, as set out above, with the facts as known by defendants at the time of this incident belies defendants' contention that probable cause existed to arrest plaintiff. At the time of this incident, therefore, the law was clearly established that the search could not be justified by the existence of probable cause and the presence of exigent circumstances.

Because plaintiff has successfully established that defendants' actions violated a clearly established constitutional right, qualified immunity will not shield defendants from fully defending plaintiff's Fourth Amendment claim.

We therefore reverse that portion of the district court's judgment granting summary judgment to defendants Dietz, Laiter, Morgan, and Solander on plaintiff's Fourth Amendment claim. Because plaintiff's Fourth Amendment claim filed pursuant to 42 U.S.C. § 1983 is reinstated, we vacate the district court's grant of summary judgment on plaintiff's claim for attorney's fees under 42 U.S.C. § 1988.

One remaining matter merits brief discussion. In his brief to this court regarding his Fifth Amendment claims, plaintiff argues that the judge, defendant Trumpp, had no jurisdiction to do what she did. This contention does not raise a claim under the Fifth Amendment. Further, with regard to any claim that plaintiff had the right to remain silent, we have held that such a right is "narrowly limited . . . to pre-arrest custodial interrogations where incriminating questions are asked." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir. 1994). This was not a pre-arrest situation, and a request for name and address is "'an essentially neutral act'" unaccompanied by the threat of criminal liability or incrimination. *Id.* (quoting *California v. Byers*, 402 U.S. 424, 432 (1971)). Plaintiff relies on *Specht v. Jensen*, 832 F.2d 1516 (10th Cir. 1987), to bolster his Fifth Amendment claim; that case has no bearing on the Fifth Amendment. The district court correctly relied on *Porter v. United States*,

473 F.2d 1329 (5th Cir. 1973), as authority to dismiss plaintiff's Fifth Amendment claims.

With regard to the remainder of plaintiff's claims, we affirm for substantially the reasons stated by the district court.

The judgment of the United States District Court for the District of Kansas is AFFIRMED in part and REVERSED in part, and this case is REMANDED to the district court for further proceedings in accordance with this order and judgment.

Entered for the Court


Robert H. Henry
Circuit Judge