**INDUSTRIAL SAFETY EQUIPMENT ASSOCIATION, INC., et al., Plaintiffs,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.**

Civ. A. No. 86–1605.

United States District Court, District of Columbia.

Feb. 27, 1987.

William E. Wickens, Paul A. Koches, Frank Pergolizzi, Wickens, Koches & Cale, Washington, D.C., for plaintiffs.

David Dearing, Karen L. Florini, Land & Natural Resources Div., Dept. of Justice, Alan Carpien, U.S. E.P.A., Washington, D.C., Martin Siegel, Nat. Inst. of Occ. Safety & Health, Dept. of HHS, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

This action was filed on June 10, 1986, seeking review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, *et seq.*, of a report published jointly in April, 1986 by the Environmental Protection Agency ("EPA") and the National Institute for Occupational Safety & Health ("NIOSH") entitled *A Guide to Respiratory Protection for the Asbestos Abatement Industry* ("Report"). Among other things, the Report recommends industry use of only two of the 13 federally-certified types of asbestos-protection respirators. Plaintiffs are Industrial Safety Equipment Association, Inc. ("ISEA"), a national association of industrial safety equipment manufacturers, and three corporate manufacturers of federally-certified asbestos protection respirators.[1] Plaintiffs contend that defendants,[2] through issuance of the Report, have unlawfully failed to comply with the requirements of the APA, and have

---

1. The corporate manufacturer plaintiffs are Mine Safety Appliances Company ("MSA"), Minnesota Mining & Manufacturing Company ("3M"), and Siebe North, Inc. ("Siebe").

2. Defendants are the EPA, NIOSH, Lee M. Thomas and J. Donald Miller. Thomas and Miller are named in their official capacity only.

abrogated plaintiffs' constitutional due process rights. Defendants have moved to dismiss under Fed.R.Civ.P. 12(b)(6), contending that the Report is not "agency action," or "final" agency action, and that no due process "deprivation" has occurred.

## BACKGROUND

The EPA and NIOSH have statutory responsibility to regulate the presence of asbestos in the work environment under the Occupational Safety & Health Act of 1970 ("OSH Act"), 29 U.S.C. § 651, et seq. (1982), and to implement procedures to abate workplace hazards from asbestos exposure.[3] The present OSHA standard establishing the permissible exposure level ("PEL") for asbestos was set in 1976 after notice and comment, at 2 fibers per cubic centimeter. 29 C.F.R. § 1910.1001(b). OSHA is in the process of revising this standard, to reduce the PEL to a proposed level of between .2 and .5 fibers per cubic centimeter. This rulemaking proceeding is ongoing, and is not challenged by plaintiffs.

Applicable regulations set forth abatement procedures for employers to meet the PEL standards, and permit the use of respirators in only limited circumstances. See 40 C.F.R. § 763.121(d)(1). In general, respirators may be used in emergencies or by employees who are removing existing asbestos structural hazards, where preferred methods of abatement are technically not feasible. Id. When permitted, a respirator must be selected from among those formally approved by the Mine Safety & Health Administration ("MSHA") or NIOSH. 40 C.F.R. § 763.121(d)(2). MSHA and NIOSH issue certificates of approval in accordance with procedures set forth in 30 C.F.R. § 11.30, et seq. Certificates are issued only for respirators that have been fully tested and determined to meet the minimum regulatory requirements. Id. at § 11.30(a). The certificate must contain any restrictions or limitations on the respirator's use, id. at § 11.30(b), but there is no

provision for specific graded ranking of certified respirators. MSHA and NIOSH may revoke any certificate for cause, but no regulations establish procedures for such revocation. Id. at § 11.34.

NIOSH and EPA produced the Report to provide a hitherto unavailable comprehensive guide to the selection and use of respiratory protection equipment for the asbestos abatement industry. Three factual determinations are set forth that underlie the NIOSH and EPA recommendations in the Report:

(1) there is no known risk-free level of exposure to asbestos, an established human carcinogen;

(2) maximum respiratory protection should be provided to workers engaged in asbestos abatement operations, in all situations; and

(3) "filter-type" respirators, which screen the ambient atmosphere for contaminants, do not provide as high a degree of protection from asbestos particles as do respirators that supply clean pressurized air from a protected source.

See Report, p. 2. The Report lists all types of available certified respirators, and notes that all of them may be used under existing regulations. In unequivocal language, however, the Report encourages the use of only two types of respirators, which EPA and NIOSH have determined provide maximum protection.

Plaintiffs, all of whom manufacture various types of certified respirators, contend that the Report is an unlawful rulemaking changing the PEL and respirator requirements, and that it has in effect revoked the certification of some of their respirators, without required procedures and in violation of their fifth amendment due process rights. Defendants assert that the Report is neither "agency action" nor "final agency action," and that no due process violation has occurred. The Court agrees that the issuance of the Report is not reviewable agency action, and shall dismiss claims seeking APA review, pursuant to Rule

---

3. The Occupational Safety & Health Administration ("OSHA") is also under a duty to regulate asbestos in the workplace under the Act, but did not produce the Report, and from the face of the Report, did not concur in the specific respirator recommendations challenged herein.

12(b)(6). Claims concerning the unlawful revocation of certification, and related due process deprivation are also appropriately subject to dismissal, based upon the facts as alleged.

## DISCUSSION

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must dismiss a complaint that fails to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a complaint under this standard, the court must presume all factual allegations of the complaint to be true, and must draw all reasonable inferences in favor of the non-movant. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court's review is limited to the pleadings, which in this case include the appended pages of the disputed Report.

### A. *Reviewable Agency Action*

Counts I, III, and IV attack the Report as a rulemaking implemented without the procedural protections of the APA. Defendants contend that APA scrutiny of the Report is not available, as its issuance is not "agency action" within the meaning of the APA. The APA defines "agency action" to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). In *Hearst Radio, Inc. v. F.C.C.,* 167 F.2d 225 (D.C. Cir.1948), the Court of Appeals for this Circuit held that an agency decision to disseminate information it had gathered on its own did not amount to agency action. The court therefore affirmed the District Court's dismissal of plaintiff's claims that allegedly false representations in the report were actionable libel, holding that the claim of libel implicated no statutory, reviewable agency action under the APA. The wisdom of this result was questioned in *Impro Products, Inc. v. Block,* 722 F.2d 845 (D.C.Cir.1983), and the court suggested that the "no action" analysis might lead to

a different conclusion today if there is specific statutory authorization to distribute the information, and if the material contains "concededly false" information. *Id.* at 849. The court did not reject the basic principle set forth in *Hearst,* however, and its application to this case—where there is no specific statutory reporting authorization, and where the Report is not alleged to contain tortious statements—appears proper.

■ In determining whether an agency report is reviewable "agency action," courts look to the actual interpretation and effect of the report. In general, an agency statement that announces a rule of law, imposes obligations, determines rights or liabilities, or fixes legal relationships is reviewable agency action. *See American Trucking Assoc. v. United States,* 755 F.2d 1292, 1296 (7th Cir.1985) (ICC economic report found not to be agency action). A recent decision in this Circuit further indicates that an agency report that makes findings, but that does not alter legal obligations, is not "agency action" subject to direct appellate review. *Radio-Television News Directors Ass'n. v. FCC* (*"RTNDA"*), 809 F.2d 860, 862 (D.C.Cir. 1987) (applying Federal Communications Act, 47 U.S.C. § 151 *et seq.* (1982)).[4] Thus, it appears that where an agency disseminates information in the absence of a specific statutory authorization, and the publication does not bind the agency, or alter the rights, liabilities, obligations, or legal relationships of private parties, then no reviewable "agency action" has occurred.

■ Under this analysis, issuance of the Report is not "agency action" under the APA. It does not change the standards necessary to obtain certification, nor does it restrict or revoke existing certification. No employer or manufacturer is obligated to use or produce a different type of respirator, and there is no indication that adverse agency action would follow if a non-

---

**4.** The agency action necessary for review in *RTNDA* was issuance of an FCC order. 42 U.S.C. § 402(a). The court concluded that the report lacked the impact characteristic of an

FCC order, and thus could not be treated as an order, making appellate review under the statute unavailable.

recommended, certified respirator were sold or used. Further, the Report is consistent with the certification regulations, as it indicates that it recommends only respirators which provide maximum protection; the regulations expressly state that certification is available to all respirators that meet *minimum* protection requirements. The Report also indicates that the remaining types of respirators remain available for use in compliance with regulatory requirements. To the extent plaintiffs' claims seek review under the APA therefore, they shall be dismissed.[5]

### B. *Unlawful Certification Deprivation*

■ Plaintiffs contend that the Report has unlawfully revoked their certificates, and has deprived them of a constitutionally protected property interest without due process of law. It is well settled that an agency license can create a protectible property interest, such that it cannot be revoked without due process of law. The respirator certificates issued to plaintiffs can only be revoked for cause. Protectible property interests have been found in comparable licensing circumstances.

Plaintiffs contend that the Report by not recommending all certified respirators, has so significantly undermined the value of their certificates as to constitute a deprivation of property, triggering the due process requirements of the fifth amendment, even though the certificates were never actually revoked. Specifically, plaintiffs assert that the Report "will substantially and adversely affect [their] ability to market and sell" the general types of respirators not expressly recommended by EPA and NIOSH in the Report. Complaint ¶ 28. There is no allegation that the Report has caused any present effect upon the marketability of these respirators.

■ On the facts as alleged, the Court is not persuaded that a constitutionally recognized "deprivation" has occurred. Plaintiffs rely upon *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir.1983), in support of their due process claim. In *Reed*, the Court found that a due process "deprivation" of property rights in a liquor license occurred when the actions of village officials destroyed the value of plaintiffs' licensed business and forced them ultimately to give up their license, even though the license was not revoked. *Id.* at 949. While the Court is not inclined to find from the record that issuance of the Report by EPA and NIOSH corresponds sufficiently to the sustained and diverse techniques of harassment documented in *Reed*, this evaluation need not be made as there is no allegation that plaintiffs' business activities in marketing and distributing the respirators have been curtailed. *Reed* does not abandon the requirement of actual impact in property deprivation analysis. *See also Reichenberger v. Pritchard*, 660 F.2d 280, 285 (7th Cir.1981) (no deprivation from alleged program of harassment when plaintiffs' business continued, and license was still in effect).

Further restricting the applicability of *Reed* and its progeny to this case, the Court notes that plaintiffs herein do not point to a specific certificate for a respirator to support their claims of unlawful revocation and due process violation, nor do they identify, beyond generic type, the affected respirators. Those cases which have found a due process claim to exist have involved a program of harassment or other action by officials, directed at a specific license and licensee. *E.g., Reed*, 740 F.2d at 947–48; *McAdoo v. Lane*, 564 F.Supp. 1215, 1217 (N.D.Ill.1983) (applying *Reed* in employment arena). The sweeping allegations of mass revocation of numbers of unspecified certificates persuade the Court that the plaintiffs actually seek herein to impose industry-wide notice-and-com-

---

5. Even if the Court were to find that mere issuance of the Report was "agency action," making appropriate the requested analysis under the APA's rulemaking provisions, the outcome would be no different. As the Report does not grant rights, constrict discretion, impose or alter legal obligations, and—important-

ly—does not bind any government agency, it would be within the APA's exemption from the statute's notice-and-comment rulemaking procedures. *See, e.g., Batterton v. Marshall*, 648 F.2d 694, 701–04 (D.C.Cir.1980). Dismissal under Rule 12(b)(6) would be equally proper.

ment prior to the agencies' issuance of a non-binding, informational agency Report.[6] The Court is reluctant to engraft the requested APA procedures onto activity already deemed not to be "agency action" under the APA. *See generally Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 535, 98 S.Ct. 1197, 1207, 55 L.Ed.2d 460 (1978) (court cannot impose procedures in excess of APA's statutory *minimum*).

For these reasons, the Court concludes that plaintiffs have failed to allege a "deprivation" of property, and accordingly fail to state a claim under the due process clause. Similarly, the facts as alleged do not support the claimed "revocation" of certificates; the concerns expressed above would preclude the granting of the requested procedural relief on this claim.

An order consistent with the above conclusions accompanies this opinion.

---

6. The APA provides for adequate, general notice-and-comment in the event that the agencies will change the regulatory certification requirements in response to the forthcoming OSHA PEL amendments. Although plaintiff alleges that the proposed PEL will not prohibit the selection and use of any currently certified respirator, the Court is not bound to accept such a legal conclusion for purposes of reviewing a motion to dismiss. This bare allegation is insufficient to propel plaintiffs' claims of unlawful revocation in the realm of review in the face of defendants' 12(b)(6) motion. The participation plaintiffs seek is already available, once the claims of injury they make take on definition.