**WHITLOCK CONSTRUCTION, INC., a Wyoming Corporation, Plaintiff,**

v.

**Dan GLICKMAN, Secretary of Agriculture, U.S. Department of Agriculture; Derrel L. Carruth, Wyoming State Director of the Rural Development Agency; Wally Beyer, Administrator for the Rural Utility Service; John E. Cochran, individually and in his official capacity as the Rural Utility Service Business and Cooperatives Program Director for the State of Wyoming, Defendants.**

No. 99–CV–069–B.

United States District Court, D. Wyoming.

Oct. 12, 1999.

Joseph Darrah, (On telephone), Darrah & Darrah, Attorneys at Law, Powell, WY, for Plaintiff.

Thomas D. Roberts, Assistant U.S. Attorney, Cheyenne, WY, for Defendants.

## ORDER

BRIMMER, District Judge.

This case arises out of a competitive sealed bidding process for a municipal water project located near Basin, Wyoming. The local water board originally accepted plaintiff's bid, but when state and federal officials threatened to remove funding for the project, the board awarded the project to another bidder. Plaintiff brought this action under both 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] Plaintiff also seeks review of agency action under the Administrative Procedures Act (APA). *See* 5 U.S.C. § 500 *et seq.* Defen-

---

1. Plaintiff's complaint does not specifically allege a cause of action under *Bivens,* but does allege that Defendant Cochran violated Plaintiff's constitutional rights. (Pl.'s Compl. ¶ 83.) The Court is required to construe the pleadings "as to do substantial justice," Fed.

R.Civ.P. 8(f), and both parties have addressed the *Bivens* cause of action in their briefs and oral arguments. Thus, the Court will read Plaintiff's complaint as asserting a claim under *Bivens. See Hindes v. FDIC,* 137 F.3d 148, 157 (3d Cir.1998).

dant John E. Cochran filed a motion to dismiss the § 1983 and *Bivens* claims against him individually, and all defendants filed a motion to dismiss the § 1983 claim against them in their official capacities.[2] The Court, in a previous Order, dismissed plaintiff's § 1983 claim against the defendant agencies and named individuals in their official capacities. This Order addresses plaintiff's claims against defendant Cochran in his individual capacity. Having considered the briefs and oral arguments and having reviewed the relevant law, the Court FINDS and ORDERS as follows:

### Background[3]

In May 1997, the South Big Horn County Water Supply Joint Powers Board ("Joint Powers Board") published a Notice of Advertisement soliciting competitive sealed bids for purposes of constructing the second of three phases of a water transmission line to serve the residents of Manderson and Basin, Wyoming. The Wyoming Water Development Commission ("WWDC") provided two-thirds of the funding for the project and the Rural Utility Service ("RUS") provided the remaining one-third. (Pl.'s Compl. ¶ 4.) The WWDC is a state agency with authority to regulate public water projects. (Pl.'s Compl. ¶ 7.) The RUS is a division of the Rural Development Agency which in turn is a division of the United States Department of Agriculture. (Pl.'s Compl. ¶ 5.) The Joint Powers Board is a local board organized under Wyoming state law. (Pl.'s Compl. ¶ 3.) Thus, the project was administered locally by the Joint Powers Board with funding from both state and federal agencies.

The bidding process followed generally recognized federal and state standards for public contract bidding. (Pl.'s Compl. ¶ 22.) The invitation to bid required bidders to supply the names of material suppliers and subcontractors as well as a list of equipment to be used on the project. Any bid that failed to comply with this requirement would be rejected as "non-responsive." (Pl.'s Compl. ¶ 17.) At the deadline for submission of bids, the Joint Powers Board would publicly open all received bids and award the project to the lowest responsible bidder. No changes or substitutions would be permitted after the deadline. (Pl.'s Compl. ¶ 17.)

At the deadline, the Joint Powers Board opened five bids. The lowest bid was submitted by Larry's Inc. ("Larry's"). Larry's bid, however, was deficient in several areas. Among other shortcomings, Larry's bid listed only one subcontractor and only three pieces of equipment for the entire project. The engineer also found that Larry's bid was imbalanced.[4] The project engineer reported these shortcomings to the Joint Powers Board and recommended the Board seek legal advice regarding its authority to reject Larry's bid and award the contract to the next lowest bidder. (Pl.'s Compl. ¶ 29, Ex. 4.) The Board, with its attorney present, held a thorough discussion of the engineer's report and awarded the project to plaintiff, Whitlock Construction ("Whitlock"), as the next lowest responsible bidder. (Pl.'s Compl. ¶ 30.) The attorney for the Joint Powers Board confirmed that Larry's bid was non-responsive. (Pl.'s Compl. ¶ 33.)

---

2. Plaintiff does not bring a *Bivens* cause of action against any federal official except Cochran.

3. For the purposes of defendants' separate motions to dismiss, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

4. Larry's apparently put high prices on items necessary to the project regardless of future changes. Larry's also put low amounts on items that might be under run and high amounts on items that are extremely hard to predict. According to the engineer, this type of imbalanced bid strengthens the bidder's position. (Pl.'s Compl. Ex. 4.) Larry's failure to list subcontractors was seen as a form of "bid shopping," which would allow Larry's to shop for the lowest bid among subcontractors after it won the project. (Pl.'s Compl. ¶ 36.)

Copies of the project engineer's report were sent to John Cochran ("Cochran"), project administrator for the RUS, and Roy Prior ("Prior") of the WWDC. Prior and Cochran requested more specific information regarding Larry's imbalanced bidding as well as Larry's failure to list subcontractors and equipment. (Pl.'s Compl. ¶ 34.) The engineer responded that his review of Larry's bid conformed with standard competitive bidding procedures and repeated his belief that Larry's bid was non-responsive. (Pl.'s Compl. ¶ 35.) Attorney for the Board also sent letters to Cochran and Prior explaining the Board's decision to reject Larry's bid as non-responsive. (Pl.'s Compl. ¶ 38.)

Shortly after the Board accepted Whitlock's bid, Prior and Cochran began a series of communications with Larry's. Prior and Cochran were concerned that the project would have a funding shortage of approximately $50,000. (Pl.'s Compl. ¶ 41d.) The two determined that the only way to make up the shortage was to award the project to Larry's, whose bid was approximately $24,000 under Whitlock's. (Pl.'s Compl. ¶ 41e.) Cochran and Prior contacted Larry's to inform the company how it could eliminate errors in its bid and receive the project. Larry's informed Cochran and Prior that it would work with the Joint Powers Board to get within budget. Sometime in early August 1997, Prior and Cochran agreed that the project should go to Larry's. None of the other bidders were given the opportunity to renegotiate their bids.

In August 1997 a meeting took place where Cochran informed the Joint Powers Board that if it did not rescind its acceptance of Whitlock's bid and award the project to Larry's, RUS would withhold its share of the funding. Furthermore, if the Board stayed with Whitlock, RUS would not provide funds for any potential litigation with Larry's. If the board went with Larry's, however, Cochran stated that

RUS would provide litigation expenses if Whitlock initiated a lawsuit. (Pl.'s Compl. ¶ 39.) Prior made identical statements with respect to WWDC funding. (Pl.'s Compl. ¶ 40.)

As a direct result of these communications, the Joint Powers Board convened a special meeting to rescind its acceptance of the Whitlock bid and approve the acceptance of Larry's bid. (Pl.'s Compl. ¶ 45.) Cochran and Prior sent letters to the Board approving these actions.

Whitlock brought this action under § 1983 and *Bivens* seeking damages. Whitlock alleges that it had a vested property interest in the project contract and that Cochran violated its rights to due process by acting in concert with state officials to deprive Whitlock of that property right.

### Analysis

**A. Motion to Dismiss § 1983 and *Bivens* Claims against Defendant Cochran in His Individual Capacity**

**1. § 1983 Claim**

■ Cochran seeks dismissal of Whitlock's § 1983 claim against him in his individual capacity. As grounds for dismissal, Cochran contends that he was acting within the scope of his authority at all times relevant to this lawsuit. (Def.'s Reply at 2.)[5] Whitlock's complaint, however, alleges that Cochran's actions in concert with Prior and the Joint Powers Board were beyond the scope of his employment as a RUS employee. (Pl.'s Compl. ¶ 84.) Because the water project is partially funded by the federal government, federal law governs the procurement process. Federal law provides that, "[c]ontracts shall be made only with responsible parties possessing the potential ability to perform successfully under the terms and conditions of a proposed procurement." 7 C.F.R. § 1942.18(j)(8). When the govern-

---

5. Attorney for Cochran has certified that with respect to incidents alleged in Whitlock's complaint, Cochran was at all times acting within the scope of his employment as employee of the United States. (Def.'s Mot. to Dismiss Cochran at 3.)

ment seeks procurement through the competitive sealed bidding process, "sealed bids are publicly solicited and a firm-fixed-price contract ... is awarded to the responsible bidder whose bid, conforming with all the material terms and conditions of the invitation for bids, is lowest." *Id.* § 1942.18(k)(2).

Here, Larry's bid did not conform to the material terms and conditions of the invitation. Whitlock alleges that in circumventing the federal procurement laws to force the acceptance of Larry's non-conforming bid, Cochran acted outside the scope of his authority as a federal official. (Pl.'s Compl. ¶¶ 83–84.) Thus, because Cochran may have been acting outside the scope of his authority, the general rule barring § 1983 suits against federal officials will not protect him in his individual capacity.

But this does not end the inquiry. To maintain a cause of action under § 1983 against Cochran in his individual capacity, Whitlock must establish that Cochran acted under color of state law. *See* 42 U.S.C.A. § 1983 (West Supp.1999); *Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir. 1988) (holding that pleadings for a cause of action under § 1983 must allege facts indicating that defendant acted under color of state law). It is well established that private individuals who conspire with state officials to violate the constitutional rights of another are considered to be acting under color of state law for purposes of § 1983 actions. *See Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Stump v. Gates,* 777 F.Supp. 808, 820 (D.Colo.1991). Here, Whitlock has alleged that Cochran conspired with Prior to violate Whitlock's due process rights. (Pl.'s Compl. ¶ 83.) According to the complaint, Cochran and Prior held secret discussions with Larry's to make Larry's bid more attractive to the Board and to bring it in line with the bidding requirements. Cochran and Prior then went to the Board and threatened removal of funding if the Board did not rescind its offer to Whitlock and award the

project to Larry's. These allegations indicate a conspiracy between Cochran and Prior to deprive Whitlock of its right to the project, and are sufficient to survive Cochran's motion to dismiss.

### 2. *Bivens* Claim

█ *Bivens* permits suits for damages against federal officials in their individual capacity for violations of certain constitutional rights under color of federal law. *See Bivens,* 403 U.S. at 389, 91 S.Ct. 1999. The Supreme Court, however, has placed limitations on the availability of a *Bivens* cause of action. First, a *Bivens* claim may not be available in cases which present "special factors counseling hesitation in the absence of affirmative action by Congress." *Bivens,* 403 U.S. at 396, 91 S.Ct. 1999. The Court has, for example, held that special factors counseled against allowing enlisted personnel to maintain a *Bivens* action for injury resulting from a superior officer's alleged unconstitutional actions despite the complete lack of an alternative remedy. *See Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (citing the "unique disciplinary structure of the Military Establishment"). Second, a plaintiff may not maintain a *Bivens* action where a defendant "shows that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution." *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (citing *Bivens,* 403 U.S. at 397, 91 S.Ct. 1999). While an explicit declaration by Congress will still work to preempt a *Bivens* cause of action, the Court no longer requires such a declaration. Since *Carlson,* the Court has held that the term "special factors counseling hesitation" includes "an appropriate judicial deference to indications that congressional inaction has not been inadvertent." *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). Thus, where the "design of a government program suggests that Congress has provided what it considers adequate remedial

mechanisms for constitutional violations that may occur in the course of its administration," the Court is unlikely to permit a *Bivens* cause of action. *Id.* This is true even though the congressional remedy may not be as effective as an individual damages remedy. *See Bush v. Lucas,* 462 U.S. 367, 372–73, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

Cochran contends that the availability of judicial review under the Administrative Procedures Act (APA) preempts Whitlock's *Bivens* cause of action. Indeed, every court that has considered the issue has determined that judicial review of agency action under the APA does preempt *Bivens* claims. *See Sky Ad, Inc. v. McClure,* 951 F.2d 1146, 1148–49 (9th Cir.1991); *Maxey v. Kadrovach,* 890 F.2d 73, 75 (8th Cir.1989); *Gleason v. Malcom,* 718 F.2d 1044, 1048 (11th Cir.1983); *Custodio v. United States,* 866 F.Supp. 479, 482 (D.Colo.1994); *see also Baca v. King,* 92 F.3d 1031 (10th Cir.1996) (holding that plaintiff had no standing to bring APA claim after district court had dismissed plaintiff's *Bivens* action based on the availability of the APA claim). Thus, if Cochran's alleged conduct in this matter constitutes agency action under the APA, Whitlock may not maintain its claim for damages under *Bivens.*

Not every activity undertaken by an agency or its employees constitutes agency action under the statutory context of the APA. *See La Compania Ocho, Inc. v. United States Forest Serv.,* 874 F.Supp. 1242, 1249 (1995) (D.N.M.). Under the APA, agency action includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C.A. § 551(13) (West 1996). "An order means the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency . . . ." *Id.* § 551(6). Orders typically involve some type of proceeding where the agency applies law and policy to past facts. *See PBW Stock Exch., Inc. v. SEC,* 485 F.2d 718, 732 (3d Cir.1973). The allegations presented in Whitlock's complaint suggest

the possibility that Cochran's statements to the Joint Powers Board constituted an order—RUS's consideration of the bidding regulations and application of those regulations to Whitlock's and Larry's bids. But Cochran never took formal action. He merely threatened the Joint Powers Board with removal of funding. Absent formal action on the matter, Cochran's actions may not be reviewable as agency action under the APA. *See Air Calif. v. United States Dept. of Transp.,* 654 F.2d 616 (9th Cir.1981) (holding that FAA's written threat to impose sanctions did not constitute a reviewable agency order where FAA never imposed the sanctions—the threat alone was sufficient to achieve the agency's purpose); *Writers Guild of Am. West, Inc. v. FCC,* 423 F.Supp. 1064, 1079 (C.D.Cal.1976) (holding that informal actions not served on the parties did not constitute "final orders" under the Administrative Orders Review Act which is more liberally construed than the APA).

A "'license' includes the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C.A. § 551(8). The term license is broadly construed. *See Atlantic Richfield Co. v. United States,* 774 F.2d 1193, 1200 (D.D.C.1985). In this case, Cochran did in a sense deny approval of Whitlock's bid by stating that RUS would withhold funding. But RUS had no power directly to reject or accept any of the bids. The decision to award the contract rested with the Joint Powers Board, and not RUS. Thus, on this record, the Court is not convinced that Cochran's decision to withhold funding can be viewed as the denial of a license subject to judicial review.

A "rule" means, among other things, "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C.A. § 551(4). In one sense, the threat to remove funding appears subject to judicial review as a statement of future

effect designed to implement or prescribe RUS policy. One could say, for example, that Cochran used his threat to inform the Joint Powers Board of RUS's position with respect to the existing bidding regulations and to the rights of bidders such as Whitlock and Larry's. On the other hand, nothing indicates that at the time Cochran threatened the Joint Powers Board his decision to pull funding was irrevocable, or forever binding on the RUS or any of the parties. Cochran made his threat informally and without notice to any of the parties whose rights could have been affected. On this record, the Court is unable to say that Cochran's threat constituted a rule under the APA. *C.f. Industrial Safety Equip. Ass'n, Inc. v. EPA,* 656 F.Supp. 852, 855 (D.D.C.1987) ("Where an agency disseminates information in the absence of a specific statutory authorization, and the publication does not bind the agency, or alter the rights, liabilities, obligations, or legal relationships of private parties, then no reviewable 'agency action' has occurred.").

In summary, the current record does not permit classification of Cochran's actions in this matter as an order, license, or rule. Until such time as the Court is able to determine with confidence the nature of Cochran's actions, the Court is unable to determine whether those actions constitute agency action in the statutory context of the APA. Thus, Cochran's motion to dismiss Whitlock's *Bivens* action against him individually must be denied.

The Court notes, however, that the above consideration of Whitlock's APA claim is made in the context of Cochran's motion to dismiss two separate and independent claims—Whitlock's § 1983 and *Bivens* claims. At this stage of the litigation, the parties have not fully briefed the Court on the validity of Whitlock's APA claim, including the existence or non-existence of agency action. Should subsequent information reveal that Cochran's undertakings in this matter constitute agency action subject to judicial review under the APA, Whitlock's *Bivens* action will be dismissed. *See Sky Ad,* 951 F.2d at 1148–49 (holding that the existence of APA review preempts a *Bivens* cause of action).

**B. Qualified Immunity**

In response to Whitlock's claim for damages under *Bivens,* Cochran asserts the affirmative defense of qualified immunity. Qualified immunity protects "government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252, 1255 (10th Cir.1998) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Mick v. Brewer,* 76 F.3d 1127, 1134 (10th Cir.1996). The qualified immunity defense applies equally to both § 1983 actions and to *Bivens* actions. *See Mick,* 76 F.3d at 1134 n. 4 (citing *Davis v. Scherer,* 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)). When a government defendant pleads the defense of qualified immunity, the plaintiff must "show (1) that the defendant's actions violated a constitutional or statutory right, and (2) that the right allegedly violated was clearly established at the time of the conduct at issue." *Id.* at 1134 (internal quotation marks omitted). To show that a right is clearly established, a plaintiff must identify either a Supreme Court or Tenth Circuit decision on point, or show that the clearly established weight of authority from other circuits supports the plaintiff's view of the law. *See Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 516 (10th Cir.1998). If the plaintiff fails to identify the specific constitutional right at issue or the specific conduct of the defendant that violated that right, the court must grant the defendant qualified immunity. *See Baptiste,* 147 F.3d at 1256.

In this case, Whitlock has alleged that Cochran violated its constitutional rights to equal protection and due process of law. As presently stated, these allegations lack the specificity required to survive a motion

to dismiss on immunity grounds. Cochran, however, did not raise the immunity defense in his answer, but presented the issue for the first time in his reply brief. (Def.'s Reply at 10.) Further, Cochran has yet to assert the immunity defense in relation to Whitlock's claim for damages under § 1983. Thus, the qualified immunity issue is not properly before the Court.

In the interests of fairness and of judicial economy, the Court will grant Whitlock leave to amend its complaint to respond to Cochran's belated assertion of qualified immunity. *See Poe v. Haydon*, 853 F.2d 418, 424–25 (6th Cir.1988) (reciting the Sixth Circuit rule requiring district courts to grant plaintiff's the opportunity to respond to an official's assertion of qualified immunity). Cochran may then move to dismiss Whitlock's § 1983 and *Bivens* claims on immunity grounds if he so desires.

### Conclusion

For the reasons above, defendant Cochran's motion to dismiss plaintiff's § 1983 and *Bivens* claims against him individually is hereby DENIED. Plaintiff shall have fifteen (15) days from the date of this Order to file an amended complaint to respond to defendant Cochran's assertion of qualified immunity.

