**AIR BRAKE SYSTEMS, INC., Plaintiff,**

v.

**Norman Y. MINETA, in his capacity as Secretary of Transportation, National Highway Traffic Safety Administration, Defendant.**

**No. 01–10308–BC.**

United States District Court, E.D. Michigan, Northern Division.

April 25, 2002.

David M. Lick, Jeffrey S. Theuer, Daniel L. Pulter, Loomis, Ewert, Lansing, MI, for Plaintiff.

Sandra M. Schraibman, United States Department of Justice, Antitrust Division, James J. Gilligan, U.S. Department of Justice, Civil Division, Washington, DC, James A. Brunson, U.S. Attorney's Office, Bay City, MI, for Defendant.

## *OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

LAWSON, District Judge.

The plaintiff, Air Brake Systems, Inc. (ABS Inc.), manufactures components for braking systems which are installed on trucks and trailers. A potential customer of ABS Inc. made inquiry of the National Highway Traffic and Safety Administration (NHTSA) as to whether a product manufactured by ABS Inc. would meet a certain Federal Motor Vehicle Safety Standard (FMVSS) pertaining to an antilock braking system (ABS) which the customer considered installing as original equipment on trailers which it manufactured. NHTSA did not conduct testing of the product, but based on information that it had available to it concluded in a letter by its acting chief counsel interpreting the requirements of FMVSS No. 121 that the plaintiff's product would not comply. NHTSA posted the letter on its website. The plaintiff promptly filed its complaint in this Court seeking an injunction requiring the removal of the letter from the agency's website and reversal of the agency's "finding" that the plaintiff's product failed to comply with FMVSS No. 121. This Court took under advisement the plaintiff's previous motion for a temporary injunction, and the parties have filed cross motions for summary judgment. The Court held a hearing on the motions on February 22, 2002, and now finds that the interpretive letters issued by NHTSA's chief counsel did not constitute a "final agency action" as that term is used in the Administrative Procedures Act, 5 U.S.C. §§ 701, *et seq.*, and therefore this Court is without jurisdiction to review the matter or otherwise provide the plaintiff the relief it seeks. The Court will therefore grant the defendant's motion for summary judgment and deny the plaintiff's motion for summary judgment.

### I.

The National Highway Traffic Safety Administration has been delegated the authority by Congress to enact motor vehicle safety standards pursuant to the National Traffic and Motor Vehicle Safety Act of 1966 (the Act), 49 U.S.C. § 30101. As a result, NHTSA established the Fed-

eral Motor Vehicle Safety Standards. In March 1995, NHTSA proposed amendments to FMVSS 121 to require that all "heavy vehicles" must be equipped with an "antilock brake system" as defined in FMVSS 121, Subsection 4. Despite concerns by certain groups that only electronic braking systems would meet the definition in Subsection 4, the amendments became final.

The plaintiff, ABS Inc., spent ten years developing a pneumatic anti-lock brake system for installation on trucks and trailers. On January 7, 1992, ABS Inc. was awarded a patent for the MSQR–5000™, which it describes as a "non-computerized anti-lock braking system which is a combination differential pressure regulator/quick release valve that is installed at each braking axle into the service air lines centered between the brake chambers." Pl.'s Brief in Supp. of Mot. for Prelim. Inj. at 7.

The MSQR–5000™ has been sold on the retrofit after-market for trucks and trailers. Recently, ABS Inc. has attempted to sell the MSQR–5000™ to original truck and trailer manufacturers. In early 2001, ABS Inc. met with MAC Trailer Manufacturing, Inc. (MAC) about possible installation of the MSQR–5000™ on its newly-manufactured trailers. MAC orally inquired of NHTSA whether the MSQR–5000™ satisfied the definition of an "antilock brake system" under the FMVSS No. 121. NHTSA orally advised MAC that the device did not satisfy the definition as set forth in the standard.

On February 13, 2001, William Washington, president of ABS Inc., and consultants hired by ABS Inc. met in Washington D.C. with employees from NHTSA to explain the operation and characteristics · of the MSQR–5000™. At that meeting, NHTSA employees requested data supporting the principles upon which the MSQR–5000™ operates and test results from an experienced and reputable testing contractor performed on a vehicle equipped with the MSQR–5000™. The record does not disclose whether any additional data were submitted.

Sometime after the February 13 meeting, Congressman Dave Camp (representing his constituent Washington) made inquiries of L. Robert Shelton, the executive director of NHTSA. Shelton responded by letter on March 21, stating that "[b]ased on a review of the promotional materials describing the devise and principles involved in its operation, it is NHTSA's view that the MSQR–5000 would not allow a vehicle to meet Standard No. 121." Compl., Ex. 3.

ABS retained counsel and on May 24, 2001 scheduled another meeting with NHTSA for June 12, 2001. ABS Inc. stated that the purpose for the meeting was to (1) demonstrate that the MSQR–5000™ complied with FMVSS No. 121 and (2) discuss tests to satisfy NHTSA that the MSQR–5000™ complies with FMVSS No. 121.

Eight days before the meeting, John Womack, acting chief counsel for NHTSA, sent a letter (the June 4 Letter) to MAC in response to its request for an interpretation of whether a "trailer equipped with the MSQR–5000 'system' installed as means of meeting ABS requirements would meet the requirements of FMVSS No. 121." Admin. R 0080. In the June 4 Letter, Womack noted that although "[i]t is not uncommon for a vehicle manufacturer to request information from an equipment manufacturer," "it is the responsibility of the manufacturer to ensure that its vehicles or equipment comply with applicable safety standards." *Id.* Womack also noted that recall and remedy orders of the National Traffic and Motor Vehicle Safety Act fall to the vehicle manufacturer, not the equipment manufacturer.

Based on the attachments provided by MAC and "other data obtained from ABS, Inc.," Womack stated that "it is NHTSA's view that the installation of the MSQR–5000 alone would not allow a vehicle to meet FMVSS No. 121's ABS requirement." *Id.* at 0081. This conclusion was reached for two reasons: (1) "the MSQR–5000 does not seem to have any means of automatically controlling wheel slip during braking by sensing, analyzing, and modulating the rate of angular rotation of a wheel or wheels" and (2) "the MSQR–5000 also appears to lack any provision for illuminating a warning light providing notification of an ABS malfunction." *Id.* at 0082. The June 4 Letter was published on the NHTSA's website.[1]

At the June 12, 2001 meeting, NHTSA representatives recommended that ABS Inc. perform a split coefficient test. The test was conducted on July 6, 2001; NHTSA representatives were invited at attend but were not present.

On July 18, 2001, ABS Inc. sent a letter to the NHTSA with the results of the split coefficient test. ABS Inc. asked NHTSA to publish a letter by counsel for ABS Inc. on its website so "both viewpoints could be expressed." Compl., ¶ 68. The letter was never posted.

ABS Inc. filed the complaint in this case on August 29, 2001. At the same time, it filed a motion for temporary restraining order and preliminary injunction. This Court denied the motion for temporary restraining order on August 30, 2001 and scheduled the motion for preliminary injunction for hearing on September 20, 2001. At the hearing, the Court took the motion for preliminary injunction under advisement and directed the defendant to complete its activity concerning the plaintiff's pending agency request. The Court gave the following directions to the parties:

1) The defendant must notify the plaintiff on or before October 4, 2001 if any additional testing is necessary or prudent for defendant's continuing review of the issues discussed and decided in its June 4, 2001 opinion letter.

2) Fourteen days thereafter, plaintiff shall advise the defendant of its intention to submit materials or that it has no intention to submit additional materials. If plaintiff intends to submit additional materials, it shall advise the defendants of the estimated time necessary to prepare and submit those materials.

3) Defendant shall complete its review within thirty days after receiving the additional materials from the plaintiff and place its findings in letter form to the plaintiff.

Order Setting Timeline For Resolution of Agency Request, 1–2.

On December 10, 2001, the NHTSA issued another interpretation letter (the December 10 Letter) which superceded the June 4 Letter. The December 10 Letter, which repeated the conclusion that the plaintiff's product would not by itself allow a vehicle on which it was installed to comply with FMVSS 121, was issued pursuant to ABS Inc.'s request for further consideration and this Court's order.

## II.

The plaintiff filed a complaint which contains six "causes of action" and seeks to overturn the agency's determination concerning the adequacy of its product under FMVSS 121 together with an injunction which removes the opinion letters from the agency's website. These "causes

---

**1.** <www.nhtsa.dot.gov>

of action" are labeled (1) violation of the Administrative Procedures Act, (2) abuse of discretion, (3) unlawful rulemaking under the Administrative Procedures Act, (4) violation of due process, (5) declaratory judgment, and (6) preliminary and permanent injunction. The gravamen of the plaintiff's complaint is that NHTSA lacks the authority to provide interpretive responses to inquiries by citizens on the question of whether a particular product actually complies with a safety standard. Rather, if NHTSA intends to measure a product's compliance against a FMVSS, it must comply with all the procedural requirements of 49 U.S.C. § 30118, which affords the manufacturer and other interested persons an opportunity to present information and argument on the product's compliance, after which the manufacturer could seek judicial review under the Administrative Procedures Act. Using the vehicle of an interpretive letter, plaintiff contends, visits devastating economic effects on the manufacturer by poisoning the product for potential customers while depriving the manufacturer of the procedural safeguards contained in § 30118, unlawfully avoiding judicial review, and violating the manufacturer's due process rights.

The defendant argues that the Secretary has an obligation under the Small Business Regulatory Enforcement Fairness Act (SBREFA), Pub.L. 104–121, Title II, § 201 to 224, Mar. 29, 1996, 110 Stat. 857–862, to respond to inquiries by small businesses such as MAC Trailer concerning the interpretation of and compliance with statutes and regulations, and that muzzling the agency would result in allowing potentially unsafe products into the stream of commerce while exposing manufacturers to costly recalls. Further, the Secretary contends that 49 U.S.C. § 30118 does not apply here because the MSQR–5000™, intended for installation on new trailers, is neither a "motor vehicle" nor "replacement equipment," to which § 30118 is limited.

Further, the interpretive letters do not constitute "final agency action" necessary to confer review jurisdiction on this Court under the Administrative Procedures Act. Finally, the Secretary argues that its actions did not directly deprive the plaintiff of an existing property interest and therefore the Due Process Clause is not implicated.

### A.

As an initial matter, the Court observes that the case is before it on the parties' cross-motions for summary judgment. The Court of Appeals for the Sixth Circuit has suggested, without deciding, that the use of summary judgment procedures is inappropriate for judicial review of an administrative action under the Administrative Procedures Act. *See Alexander v. Merit Sys. Prot. Bd.,* 165 F.3d 474, 480 (6th Cir.1999). The Tenth Circuit has held that a motion for summary judgment is an inappropriate procedural device to review administrative decisions because it invites the district court to rely on evidence outside the administrative record. *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1579–80 (10th Cir.1994). In that case, the Court stated that the district court is not exclusively a trial court but sometimes acts as an appellate court. It reasoned that since motions for summary judgment are "conceptually incompatible with the very nature and purpose of an appeal," the district court should be governed by the Federal Rules of Appellate Procedure. *Id.* at 1580.

In this case, the defendants argue that this Court should confine its inquiry to the administrative record. Although supplementation of the administrative record is appropriate in some cases, *see Sierra Club v. Slater,* 120 F.3d 623, 638 (6th Cir.1997), the Court finds that it is neither necessary nor appropriate to consider affidavits out-

side of the administrative record or any information that was not available to the administrative decision makers in this case, except, perhaps, with respect to the plaintiff's due process claim.

Review of actions by an administrative agency is generally conducted under the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* According to section 706 of the Act, a federal court must "hold unlawful and set aside agency action, findings and conclusions found to be ... arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. 706(2)(A).[2] *See GTE Midwest, Inc. v. Fed. Communications Comm'n,* 233 F.3d 341, 344 (6th Cir.2000). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Even though the analysis is deferential to the agency, the agency nonetheless must articulate a "rational connection between the facts found and the choice made." *Id.* (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). An abuse of discretion is found when, based on the evidence, the explanation offered for a particular outcome is unreasonable. *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442,* 64 F.3d 238, 242 (6th Cir.1995).

An agency ruling that is contrary to law likewise must be set aside. A court may invalidate an agency adjudication or rule making if it is "inconsistent with the statutory mandate or frustrate[s] the policy that Congress sought to implement." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1350 (6th Cir.1994). "An agency which violates its regulations is acting contrary to law...." *Chrysler Corp., v. Schlesinger,* 412 F.Supp. 171, 177 (D.Del.1976), *vacated on other grounds sub nom Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979); *S & S Logging Co. v. Barker,* 366 F.2d 617, 624 n. 6 (9th Cir. 1966); *Delaware v. Bender,* 370 F.Supp. 1193, 1203 (D.Del.1974).

Thus, based on the administrative record this Court must first determine whether the interpretive letters constitute rule making, a final agency adjudication or an ultra vires act of the agency that is beyond its authorized scope or otherwise contrary to law.

**2.** Section 706 of the Administration Procedures Act, 5 U.S.C. § 706, states:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## B.

Administrative agencies conduct their business by means of making adjudications, rule making, and issuing interpretive decisions. Only final adjudications and rule making are subject to judicial review. The Administrative Procedures Act provides that

> [a]gency action made reviewable by statute and *final agency action* for which there is no adequate remedy in a court are subject to judicial review. *A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.* Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704 (emphasis added). "Agency action" includes the "whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). However, not every "action" taken by an agency constitutes "final agency action" under the statute and entitles a party to judicial review. *See Pharm. Mfrs. Ass'n v. Kennedy,* 471 F.Supp. 1224, 1226 (D.Md. 1979).

A "rule" is defined as

> the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription of the future of rates, wages, corporate or financial structures

or reorganizations thereof, prices, facilities, appliances, services or allowances therefore or of valuations, costs, or accounting, or practices bearing on any of the foregoing.

5 U.S.C. § 551(4). As one court noted, "[t]he APA's broad definition of the term 'rule' includes 'virtually every statement an agency may make.'" *Nat'l Treasury Employees Union v. Reagan,* 685 F.Supp. 1346, 1356 (E.D.La.1988). Although this may be true, courts are not willing to allow judicial review of all agency statements.

Agency adjudications—that is, the "agency process for the formulation of an order," 5 U.S.C. § 551(7)—may result from formal or informal processes. Formal adjudications follow rules that establish a trial-type setting, *see* 5 U.S.C. §§ 554(b), (c), 556 and 557, and occur only when "required by statute to be determined on the record after an opportunity for an agency hearing." 5 U.S.C. § 554(a). *See Camp v. Pitts,* 411 U.S. 138, 140–41 & n. 3, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Informal adjudications are decisions which result from off-record or informal procedures conducted in compliance with the "minimal requirements" of 5 U.S.C. § 555(b). *See American Airlines v. Dept. of Trans.,* 202 F.3d 788, 797 (5th Cir.2000). Whether formal or informal, however, judicial review may occur only when an adjudication is "final."

■ "As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (citations omitted). The defendant

argues that the letters in this case satisfy neither requirement. The Court agrees.

The June 4 and December 10 Letters do not represent the last step in the process leading to the formulation of an order from NHTSA. Rather, the letters contain the opinion of NHTSA's acting chief counsel— a "subordinate official," *see Franklin v. Massachusetts,* 505 U.S. 788, 796–98, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992)—that the plaintiff's product "alone" will not permit a vehicle to comply with FMVSS 121. The letter was not issued pursuant to 49 U.S.C. § 30118, the statute dealing with defective and noncomplying vehicles and replacement equipment which authorizes action by the Secretary of Transportation. The Chief Counsel's opinion is not binding on the Secretary, but represents the position the Secretary is likely to take *if and when* proceedings are initiated relating to the product of a vehicle in which it is installed.

More importantly, the Letters do not determine "rights or obligations" or cause "legal consequences" to "flow." The Letters are advisory in nature and have no legal effect. The plaintiff makes the valid, practical point that economic consequences "flow" from the opinion Letters and therefore it should have the right to challenge in court the validity of the opinions. Perhaps the plaintiff should have that right, but at present it does not. MAC Trailer chose to abandon its purchase of the plaintiff's product, presumable influenced by the warning from the defendant that compliance with a FMVSS would not result. Nevertheless, the decision not to purchase the MSQR–5000™ was not mandated by agency action and was the exercise of the free judgment of MAC Trailer. Reliance on a letter warning that sanctions may result from the failure to comply with federal regulations does not automatically convert the letter into "final agency ac-

tion" under the Administrative Procedures Act.

This point is illustrated by *Air California v. United States Department of Transportation,* 654 F.2d 616, 621 (9th Cir.1981). In that case, the Orange County Board of Supervisors adopted a policy to freeze the level of airport operations at the Orange County Airport to prevent increased noise levels. This policy had the effect of excluding new carriers and benefitting Air California, an existing carrier. The Board had subjected the airport to federal regulation by entering into agreements with the FAA to gain federal airport funds. A hearing was held to investigate allegations made by carriers who unsuccessfully applied for authorization to use the airport that the airport policy violated federal law. After the hearing, the FAA Chief Counsel sent a letter to the Board warning that failure to comply with federal regulations would result in the FAA pursuing sanctions. The letter stated that no formal action would be taken for thirty days.

Because of the letter, the Board met and adopted an interim plan to reallocate flights, which resulted in reducing the number of flights authorized for Air California. No formal action by FAA was taken. Air California sought judicial review of the letter under the Administrative Procedures Act, contending it would "suffer substantial economic loss if the Board submitted to the FAA's demands by reallocating flights from Air California to new carriers." *Id.* at 619.

The Court held that the letter was not final agency action because it was "informal [in] nature" and "indirect [in its] effect upon the complaining party." *Id.* at 620. The court stated that the letter was neither a "definite statement of the agency's position nor a document with the status of law" because it "did not specify the exact form that compliance would take, but rath-

er commented, briefly and tentatively, upon alternatives suggested in the investigative report and offered aid in the Board's attempt to comply." *Id.* The Court also noted that the "effect of the FAA's actions on Air California was not direct and immediate." It stated that "[w]hile the desire to avoid litigation and the danger of losing federal funding no doubt exerted strong pressure on the Board, it did not relieve the Board of responsibility for its decision." *Id.* at 621.

In sum, a statement by an agency is not an adjudication unless it "announces a rule of law, imposes obligations, determines rights or liabilities, or fixes legal relationships...." *Industrial Safety Equip. Ass'n, Inc. v. Envtl. Prot. Agency,* 656 F.Supp. 852, 855 (D.D.C.1987), *aff'd,* 837 F.2d 1115 (D.C.Cir.1988). The Letters do none of these. The plaintiff argues that the interpretation letters have affected sales for the MSQR–5000™. Although an agency process without binding effect may have "significant practical effects," it is not "final agency action." *Int'l Tel. & Tel. Corp. v. Local 134,* 419 U.S. 428, 444–48, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975).

█ Nor do the letters constitute rule making within the meaning of 5 U.S.C. § 551(4) (defining "rule"). They do not prescribe or implement law or policy, but rather describe the operation of an existing rule. The "mere fact that an agency action has 'substantial impact' [does not] 'transform[ ] it into a legislative rule.'" *Industrial Safety,* 837 F.2d at 1121. Further, if the plaintiff desires to challenge in court a rule relating to motor vehicle safety standards, it must seek review "in the [appropriate] court of appeals," 49 U.S.C. § 30161(a), which has exclusive jurisdiction over such challenges. *See Greater Detroit Res. Recovery Auth. v. Environmental Prot. Agency,* 916 F.2d 317, 321 (6th Cir. 1990).

The Court concludes that, despite the obvious economic impact which NHTSA's interpretive Letters visit on the plaintiff, these letters do not constitute final agency action or rulemaking subject to judicial review under the Administrative Procedures Act.

## C.

The plaintiff argues that the agency's sole authority to issue the interpretive Letters is derived from 49 U.S.C. § 30118, which prescribes the procedure for determining whether a product is defective or fails to comply with a safety standard. The parties agree that NHTSA did not comply with § 30118 in issuing the Letters. That section requires an initial determination of noncompliance, notice, an opportunity for the manufacturer "to present information, views and arguments" in favor of the product, and a final decision before remedial action can be ordered by the Secretary. 49 U.S.C. § 30118(a) & (b). The plaintiff argues further that the statute requires NHTSA to conduct independent testing before making an initial determination of noncompliance or defect, although the statute specifically provides other means of information gathering including "inspection, investigation, or research...." Because the statute by its terms applies only to "the manufacturer of a motor vehicle or replacement equipment," the Secretary contends it is not bound by its procedures because the MSQR–5000™ is neither, as those terms are defined by 49 U.S.C. §§ 30102(a)(6) & (b)(D). The Court need not address the applicability of the procedural requirements of § 30118(a) because it has already determined that no final action was taken, and the Letters at most could constitute an "initial decision," which is not immediately reviewable. 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly re-

viewable is subject to review on the review of the final agency action.").

Assuming that 49 U.S.C. § 30118 does not apply to this case, then the Court must determine what authority the NHTSA has to issue interpretation letters. The Supreme Court has held that "an agency's power is no greater than that delegated to it by Congress." *Lyng v. Payne,* 476 U.S. 926, 937, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986). The plaintiff, accordingly, contends that absent statutory authorization to issue the Letters, NHTSA committed an ultra vires act contrary to law.

 However, an administrative agency has the implied authority to interpret its own rules. "Because applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers." *Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 151, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). Therefore, the NHTSA has the implied authority to issue interpretation letters on the regulations which it administers. The Court of Appeals for the District of Columbia noted that "[a]dvisory opinions should, to the greatest extent possible, be available to the public as a matter of routine; it would be unfortunate if the prospect of judicial review were to make an agency reluctant to give them." *Nat'l Automatic Laundry & Cleaning Council v. Shultz,* 443 F.2d 689, 699–700 (D.C.Cir.1971).

Moreover, NHTSA has a duty to give advice on the application of its rules, including the safety standards it has developed, by responding to inquiries posed by small businesses, as mandated by the Small Business Regulatory Enforcement Fairness Act (SBREFA), Pub.L. 104–121, Title II, § 201 to 224, Mar. 29, 1996, 110 Stat. 857–862. SBREFA provides for informal small entity guidance, stating that

[w]henever appropriate in the interest of administering statutes and regulations within the jurisdiction of an agency which regulates small entities, it shall be the practice of the agency to answer inquiries by small entities concerning information on, and advice about, compliance with such statutes and regulations, interpreting and applying the law to specific sets of facts supplied by the small entity. In any civil or administrative action against a small entity, guidance given by an agency applying the law to facts provided by the small entity may be considered as evidence of the reasonableness or appropriateness of any proposed fines, penalties or damages sought against such small entity.

SBREFA § 213(a). NHTSA's Acting Chief Counsel found that MAC Trailer was a "small entity" in the December 10 Letter, and the plaintiff has not challenged that finding. The parties further agree that NHTSA's scrutiny of the MSQR–5000™ was initiated by MAC Trailer's initial inquiry as to whether that product's installation as original equipment on its trailers would satisfy the requirements of FMVSS 121.

The Court finds that there is ample authority permitting NHTSA's response to MAC Trailer's inquiry and issuance of the letters was not beyond the authority of the agency.

### D.

 The plaintiff claims that the NHTSA violated its due process rights because the interpretation letters may result in lost sales of the MSQR–5000™. However, "the due process [clause] does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Court Nursing Ctr.,* 447 U.S. 773, 789, 100

S.Ct. 2467, 65 L.Ed.2d 506 (1980). Because plaintiff's lost sales would be "no more than an indirect injury resulting from government action," there is no deprivation under the Due Process Clause. *Nuclear Transp. & Storage, Inc. v. United States,* 890 F.2d 1348, 1354 (6th Cir.1989).

### E.

Finally, the plaintiff's claim for injunctive relief is nothing more than a request for an equitable remedy that is dependent on the underlying merits of its other claims; it does not state an independent cause of action. *Cf. Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) (permanent injunctive relief requires actual success on the merits). Because the Court finds that the plaintiff has not prevailed on its other counts, the request for an injunction will likewise be denied.

### III.

The Court concludes that the June 4 and December 10 Letters are not reviewable as final decisions under the Administrative Procedures Act. Further, the plaintiff has not established a violation of the Due Process Clause, or entitlement to injunctive relief.

Accordingly, it is **ORDERED** that the plaintiff's motion for a preliminary injunction [dkt # 2], previously taken under advisement, is **DENIED.**

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 21] is **DENIED.**

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 24] is granted, and the plaintiff's complaint is **DISMISSED** with prejudice.